Oct. 12, 2023

**VIA ECF**

Hon. Paul G. Gardephe, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, NY 10007

Re:     *Vice et al. v. Nat'l Collegiate Student Loan Trust 2004-1 et al.*, 23-CV-06287-PGG-BCM

Dear Judge Gardephe:

We write on behalf of Plaintiffs in the above-referenced case. Pursuant to Part IV.A of this Court's Individual Rules of Practice for Civil Cases, Plaintiffs oppose Defendants' planned Rule 12 motions, which they described in six letters requesting pre-motion conference (the "Letters").[1] None of Defendants' Letters sets forth any valid basis for Rule 12 dismissal, and there is no need for this Court to spend time on full motion practice. This case should proceed immediately to discovery.

## I.     <u>Background</u>

For nearly 20 years, Defendants have unlawfully collected on debts that they do not own. None of the Defendants loan money, nor do they possess assignments of debts from lenders who do. The Trust Defendants have admitted in Delaware Chancery Court that debts allegedly owed to the Trusts cannot be proved. Nevertheless, Defendants conspired to extract incredible sums of money from individuals in every state in the country. It is no surprise that regulators at the state and federal level have deemed Defendants' practices unlawful.

### A.     <u>The National Collegiate Student Loan Trusts Were Settled In A Wall Street Securitization Process Where Key Documents Were Mishandled</u>

There are 15 National Collegiate Student Loan Trusts in total, all created in New York City. Each Trust was settled on Wall Street, within a few miles of this Court, between 2003 and 2007. Similarly, the sales of Trust bonds to the investors who receive the proceeds from Defendants' scheme were also handled in New York City. (Compl. ¶¶ 10, 25–30, 45–52, 160). The current owners of the Trusts later purchased all equity shares in 2009. (*See* Trust Defs.' Rule 7.1 Discl. (ECF No. 39)). The owners' purchase agreement selects this Court— the U.S. District

---

[1] The letters were filed by Rodenburg Law Firm ("Rodenburg") (ECF No. 33); Pennsylvania Higher Education Assistance Agency ("PHEAA") (ECF No. 34); Transworld Systems Inc. ("TSI") and EGS Financial Care, Inc. f/k/a NCO Financial Systems, Inc. ("EGS") (ECF No. 36); American Coradius International, LLC ("ACI") (ECF No. 37); National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-3, and National Collegiate Student Loan Trust 2007-1 (collectively, "Trusts") (ECF No. 38); Eaton Group Attorneys, LLC ("Eaton Group") (ECF No. 40). References to "Compl. ¶ __" are to Plaintiffs' Class Action Complaint (ECF No. 1).

Hon. Paul G. Gardephe
Oct. 12, 2023
Page 2

Court for Southern District of New York—as the proper venue to settle disputes concerning the Trusts.[2]

During a securitization, a trust must receive assignments of ownership of specific loans from each of the lenders, for ownership of those loans to transfer from the lenders to the trust. To do this, lists ("Schedules" or "Rosters") are included with the sale agreements identifying which specific loans the Trust is receiving ownership. In the case of the Trusts here, evidence demonstrates that the Trusts never received the assignment of the loans. For example, SEC-filed sale agreements for the various Trusts were inconsistent about the physical location of the Schedules. Some said it was on a "CD". Some said it could be requested from a particular agent/custodian. But none gave precise, consistent details. The Trusts' owners eventually learned that the Schedules could not be located. Without the Schedules, the Trusts never owned the loans, and could not lawfully collect on them. Defendants have known about this for over a decade. In the mid-2010s, the Trusts' owners conducted an audit of the Trusts' records custodians and discovered the Schedules were missing. (Compl. ¶¶ 9–10, 14–17, 25–30, 45–52, 137–140).

### B. The Trusts Admitted They Had No Loan Assignments in Delaware Chancery Court

In 2018, the Trusts filed their Delaware suit against TSI and others, after an audit of PHEAA revealed that it did not have Schedules transferring loans to the Trusts. Because they cannot prove chain of title, they cannot legally collect on them in court.[3] PHEAA knew the debts it did not own the debts but sent letters telling alleged borrowers to give them certain amounts by certain dates, coordinated auto-payments for Trusts' benefit, etc. As to TSI, the Trusts alleged that PHEAA would forward the Trusts' unprovable debt accounts to TSI for escalated collections, including dunning letters demanding payment by a certain date or face being sued. To do this, TSI relied on the Network Firms located throughout country. Because the actual owners of the loans did not contact them, Plaintiffs did not learn Defendants' collection scheme was a fraud until it was revealed by a series of investigations by government regulators. Even then, the government investigations have only revealed in bits and pieces crucial aspects of the scheme. For example, in August 2020 the New York Attorney General published details on TSI's and its Network's use of doctored proof of chain of title. (Compl. ¶¶ 4, 10, 14–17, 25–30, 45–52, 131–140, 201–204).[4]

---

[2] That purchase agreement was filed with the U.S. Securities and Exchange Commission, and may be viewed at the following link:
https://www.sec.gov/Archives/edgar/data/1262279/000110465909022702/a09-9474_1ex99d1.htm.

[3] The Trusts' Delaware complaint is incorporated by reference into Plaintiffs' Class Action Complaint here. (Compl. ¶¶ 14–17, 137–139). This Court has already reviewed evidence corroborating the Delaware suit's facts, in an ongoing case involving National Collegiate Trusts and TSI. *Seaman v. Nat'l Collegiate Student Loan Trust 2007-2*, No. 18-cv-1781 et seq., 2023 U.S. Dist. LEXIS 173057, at *67 n.10 (S.D.N.Y. Sep. 27, 2023) (Gardephe, J.).

[4] This court has also recently published new, revelatory information about the collection practices of the National Collegiate Student Loan Trusts, TSI, and participants in TSI's Network of Firms. *Seaman*, 2023 U.S. Dist. LEXIS 173057, at *84–85 (describing uniform TSI policies requiring Network Firms to proceed with collection despite lack of chain of title).

Hon. Paul G. Gardephe
Oct. 12, 2023
Page 3

    C.   <u>TSI And Its Nationwide Network Of Collection Firms Collected On Debts
        They Knew Weren't Assigned</u>

TSI is a nationwide debt collector that coordinates the "Network Firms," local law firms and collection agencies throughout country that regularly collect on behalf of the National Collegiate Student Loan Trusts. These include ACI (located in Buffalo, NY but operating nationally), Eaton (Louisiana), and Rodenburg (the Dakotas). Network Firms don't just handle collections for NCSLT Trusts—they also do other collections for large creditors that are clients of TSI. When a Firm joins the Network, TSI provides a manual setting forth exactly how to service each TSI client's accounts, including the National Collegiate Student Loan Trusts. For the National Collegiate instructions, Network Firms are told they will not be provided evidence of chain of title, i.e., the Schedules, even though these are essential to any debt collection.[5] The Network Firms are required to proceed with collections anyway. In August 2020, New York Attorney General penalized TSI for having Network Firms file documents in state court that falsely claimed to be the Schedules, but were not. Still, in 2022 and 2023, Plaintiffs received Network Firm collection letters falsely asserting that they owed the Trusts money. (Compl. ¶¶ 6–17, 31–36, 56–130, 137–140).

## II.   <u>Argument</u>

### A.  <u>The FDCPA Claims Are Well Pleaded</u>

Defendants' are incorrect when they argue that Plaintiffs do not to state a claim under the FDCPA.[6] (TSI Ltr., 3; Rodenburg Ltr., 3; Eaton Ltr., 3; ACI Ltr., 2). Courts agree that "false or misleading" collection letters like the ones sent by Defendants trigger FDCPA liability, because such communications either (1) confuse individuals into making payments on debts when they should not be, or (2) force individuals to spend time and money disputing with the collector. *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 999–1003 (3d Cir. 2011) (listing, inter alia, *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993)).

Defendants Rodenburg and Eaton incorrectly assert that recent Second Circuit decisions approve letters like Defendants'. (Rodenburg Ltr., 3; Eaton Ltr., 4 (listing cases)). These "name recognition cases" only involved a confusion of identity, where the plaintiffs argued that they did not recognize the name of the current creditor as listed in the collection letters they received.[7]

---

[5]  This Court has already reviewed evidence establishing that TSI's uniform written policies informed Network Firms that requisite proof including chain of title would not be made available for National Collegiate accounts on which Network Firms were instructed to collect. *Seaman*, 2023 U.S. Dist. LEXIS 173057, at *84–85.

[6]  The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"). References herein to other statutes are as follows: Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961 et seq. ("RICO"); and N.Y. Gen. Bus. Law § 349 ("GBL").

[7]  *Taylor v. Am. Coradius Int'l, LLC*, 2020 U.S. Dist. LEXIS 139923, at *5–8 (E.D.N.Y. Aug. 5, 2020) (Komitee, J.) (cited by Rodenburg Ltr., 3 Eaton Ltr., 4) (no dispute over identity of current creditor, only over whether its identification in letter was prominently enough); *Rosenberg v. Frontline Asset Strategies*, 556 F. Supp. 3d 157, 162 (E.D.N.Y. 2021) (Cogan, J.) (cited by same)

Hon. Paul G. Gardephe
Oct. 12, 2023
Page 4

Here, in contrast, the claim is that the named current creditor listed in the letters knows that it does not own the debt. Deceptions of far lesser importance warrant FDCPA liability. *E.g.*, *Knudsen v. Contract Callers, Inc.*, No. 20-cv-02269, 2021 U.S. Dist. LEXIS 107425, at *9 (E.D.N.Y. May 21, 2021) (Italiano, J.) (FDCPA liability where collection letters misled recipients as to proper address to mail payments).

Eaton relies only on abrogated authority for its argument that a debt collector is not required to maintain or provide any documentation verifying the debt at the time it communicates with consumers to demand payment. *Compare* Eaton Ltr., 4 (citing *Stonehart v. Rosenthal*, No. 01-cv-651, 2001 U.S. Dist. LEXIS 11566, at *23 (S.D.N.Y. Aug. 13, 2001) (Scheindlin, J.)), *with Lee v. Kucker & Bruh, LLP*, 958 F. Supp. 2d 524, 529 n.1 (S.D.N.Y. 2013) (Schofield, J.) (emphasizing that *Stonehart* has been abrogated because it is "at odds with binding Second Circuit precedent") (citing *Goldman v. Cohen*, 445 F.3d 152 (2d Cir. 2006)).[8]

Defendants TSI and ACI rely on dicta from an out-of-circuit decision in an attempt to impose an unusually high standard for FDCPA liability. (TSI Ltr., 3; ACI Ltr., 2 (citing merit *Poulin v. Thomas Agency*, 760 F. Supp. 2d 151, 160 (D. Me. 2011))). The *Poulin* court stressed that the plaintiff's wife had herself verified the debt in voluntary communications with the collector, obviating the question of whether she was received by the dunning letter. *Poulin*, 760 F. Supp. 2d at 160–61. Further, *Poulin* has been criticized insofar as its dicta suggest a heightened standard for FDCPA liability. *Ghanta v. Immediate Credit Recovery, Inc.*, No. 16-cv-573, 2017 U.S. Dist. LEXIS 67726, at *15–24 (N.D. Tex. Apr. 18, 2017) (criticizing *Poulin* and imposing FDCPA liability for failure to verify debt).[9]

---

("[The] plaintiff does not dispute [the] authenticity" of "the chain of title."); *Williams v. MRS BPO, L.L.C.*, 2022 U.S. Dist. LEXIS 125119, at * (S.D.N.Y. July 14, 2022) (Seibel, J.) (cited by Rodenburg Ltr., 3) (no dispute over identity of current creditor, only over whether its identification by its "technical legal name" was misleading).

[8]   Notwithstanding its abrogation, *Stonehart* is also factually distinguishable because, unlike Defendants here, the collector there responded to the consumers' dispute with sufficient proof to verify the debt. 2001 U.S. Dist. LEXIS 11566, at *23.

[9]   TSI also raises two factual arguments that are demonstrably false. First, TSI denies it is a debt collector, (TSI Ltr., 3), even though it is registered as a debt collector in numerous jurisdictions, including New York City (NYC Debt Collection Agency License No. 2012420-DCA; expires January 31, 2025). Plaintiffs are correct that TSI is a debt collector. (Compl. ¶ 31). Second, without evidence, TSI denies that it directs and controls the Defendants that collect Trust debt at the local level (Rodenburg, Eaton, and ACI). (TSI Ltr., 3). These Defendants were part of TSI's nationwide Network of Firms collecting moneys for the Trusts, and were required to follow TSI's uniform protocols in so doing. (Compl. ¶ 56–66, 203); *see also Seaman*, 2023 U.S. Dist. LEXIS 173057, at *84–85 (discussing evidence on this issue).

Hon. Paul G. Gardephe
Oct. 12, 2023
Page 5

### B. **The RICO Claims Are Well Pleaded**

1. The Complaint Alleges Predicate Acts with Particularity

   *a.  The complaint properly pleads bank fraud as a predicate act.*

The Trusts argue that Plaintiffs cannot rely on bank fraud as a predicate act because they are not financial institutions. (Trusts Ltr., 4). The authority Defendants rely on for this proposition is an unpublished district court case that does not consider the changed legal landscape after the Supreme Court's decision in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008). In *Bridge,* the Supreme Court held that a RICO plaintiff did not need to be the defrauded party in order to rely on wire fraud as a predicate act. *Id.* at 648. Other, more recent decisions have correctly acknowledged that *Bridge* means a RICO plaintiff need not show reliance on fraud pleaded as predicate acts. *See Related Companies, L.P. v. Ruthling*, No. 17-cv-4175, 2017 U.S. Dist. LEXIS 207857, at *52–53 (S.D.N.Y. Dec. 18, 2017) (Rakoff, J.) (explaining that *Bridge* made clear that reliance was not necessary for wire and mail fraud to be pled as predicate acts); *Lavastone Capital LLC v. Coventry First LLC*, 2015 U.S. Dist. LEXIS 56855, at *11 n.4 (S.D.N.Y. Apr. 22, 2015) (Rakoff, J.) (collecting precedent and permitting a RICO plaintiff to invoke bank fraud as a predicate act where the plaintiff was not the defrauded financial institution)

   *b.  The complaint sufficiently pleads scienter for Rodenburg.*

Rodenburg argues that the complaint must be dismissed because it fails to plead scienter "as to Rodenburg." (Rodenburg Ltr., 5). But the Complaint alleges Rodenburg sent particular collection letters, on particular dates, with particular misrepresentations about a particular debt's provability and collectability. (Compl ¶¶ 112, 114, 116, 186). The Complaint also alleges that Rodenburg "did not possess, and did not review, any actual documentary support for the collection efforts." (Compl. ¶ 72). Finally, the Complaint alleges that the CFPB and NYAG had previously found the Trusts were illegally attempting to collect time-barred debts. (Compl. ¶¶ 131–40). Together, these allegations sufficiently plead fraudulent intent by Rodenburg.

There are "two distinct ways in which a plaintiff may plead scienter without direct knowledge of the defendant's state of mind. The first approach is to allege facts establishing a motive to commit fraud and an opportunity to do so. The second approach is to allege facts constituting circumstantial evidence of either reckless or conscious behavior." *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 268–69 (2d Cir. 1993). Here, there is a clear motive and opportunity for Rodenburg to commit fraud—namely, to continue to generating fees from its work carrying out the fraud at the behest of TSI. Moreover, the existence of enforcement proceedings revealing the history of fraudulent debt collection efforts indicate that Rodenburg's conduct was at least reckless. Such government action is atypical, and "atypicality, at least in business affairs, may circumstantially suggest the possibility of fraud." *131 Main St. Assocs. v. Manko*, 897 F. Supp. 1507, 1528–29 (S.D.N.Y. 1995) (Sand, J.). That, coupled with the allegation that Rodenburg lacked any documentary support for its efforts, constitute the sort of "egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of gross negligence which can be the functional equivalent of recklessness." *Goldman v. McMahan, Brafman, Morgan & Co.*, 706 F. Supp. 256, 259 (S.D.N.Y. 1989) (Leisure, J.). Finally, it is sufficient that a defendant merely "aided and abetted" at least two predicate acts for it to be liable under § 1962(c). *Alix v. McKinsey & Co.*, No. 18-cv-4141, 2023 U.S. Dist. LEXIS 145872, at *35–

Hon. Paul G. Gardephe
Oct. 12, 2023
Page 6

36 (S.D.N.Y. Aug. 18, 2023) (Furman, J.) ("For several reasons, the Court sides with those courts that have held that aiding and abetting a predicate act itself qualifies as a predicate act.").

Moreover, while it is true that the Complaint must plead predicate acts involving fraud with particularity, there is no requirement that those allegations be particular to Rodenburg for the conspiracy claim under § 1962(d). Under § 1962(d), Plaintiffs must show only "that defendant acted in furtherance of the conspiracy in some manner (although not necessarily by the commission of any RICO predicate acts himself)." *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 340 (S.D.N.Y. 2019) (Gardephe, J.); *see also Salinas v. United States*, 522 U.S. 52, 63 (1997) ("[T]he RICO conspiracy provision . . . is even more comprehensive than the general conspiracy offense" because it contains "no requirement of some overt act or specific act."). As to any given conspirator, "it suffices that he adopt [] the goal of furthering or facilitating the criminal endeavor." *United States v. Ciccone*, 312 F.3d 535, 542 (2d Cir. 2002). The defendant "need only know of, and agree to, the general criminal objective of a jointly undertaken scheme." *United States v. Yannotti*, 541 F.3d 112, 122 (2d Cir. 2008).

> c. *The Complaint sufficiently pleads that PHEAA committed two predicate acts and does not impermissibly rely on group pleading.*

PHEAA argues that Plaintiffs failed to plead predicate acts with particularity with respect to the RICO claims against it. (*See* PHEAA Ltr., 2). As an initial matter, this is not required to state a claim for RICO conspiracy under § 1962(d). *See Martin Hilti Family Tr.*, 386 F. Supp. 3d at 340. Moreover, with respect to the claim under § 1962(c), the Complaint alleges that PHEAA "makes the initial attempts to collect" and then enlists TSI for additional collection efforts, which in turn retains collection agencies like Defendants Rodenburg and Coradius. Compl. ¶¶ 4–5.

These allegations are sufficient to state a claim that these Defendants were acting as PHEAA's agents when they committed various predicate acts. This is sufficient to state claims under § 1962(c) based on vicarious liability. *Fairfield Fin. Mortg. Grp., Inc. v. Luca*, 925 F. Supp. 2d 344, 350 (E.D.N.Y. 2013) (Spatt, J.) (holding complaint pled vicarious liability against companies under § 1962(c) as codefendants "committed racketeering acts as agents of" the companies, which "participated in and benefited from these acts."). At a minimum, the complaint has sufficiently alleged PHEAA "aided and abetted" at least two predicate acts, which is sufficient for it to be liable under § 1962(c). *Alix*, 2023 U.S. Dist. LEXIS 145872, at *35–36.

> d. *The RICO claims against the Trusts, TSI, EGS, ACI, and Eaton Group Satisfy Rule 9(b).*

The Trusts, TSI, EGS, ACI and Eaton Group all make cursory arguments that Plaintiffs' RICO claims fail to satisfy Rule 9(b), but fail to identify any particular deficiency. (*See* TSI Ltr., 5; ACI Ltr., 4, Trusts Ltr., 4; Eaton Ltr., 5). But for many of the same reasons discussed in the above sections, Plaintiffs RICO claims are sufficiently pled.

2.   The Complaint Sufficiently Alleges a Pattern of Racketeering

Some of the Defendants argue that Plaintiffs fail to plead either an open-ended or closed-ended pattern of racketeering. (PHEAA Ltr., 3; Trusts Ltr., 4). It is correct, that "[i]n this Circuit, a pattern should generally extend over at least two years to establish closed-ended continuity."

Hon. Paul G. Gardephe
Oct. 12, 2023
Page 7

*Williams v. Equitable Acceptance Corp.*, 443 F. Supp. 3d 480, 493 (S.D.N.Y. 2020) (Buchwald, J.). However, the RICO claims in this case are brought on behalf of a class, and the alleged predicate acts clearly extend beyond two years. (Compl. ¶¶ 7, 12).

Moreover, the Court "need not resolve the closed-ended continuity issue" because "plaintiffs have adequately pled open-ended continuity." *Williams*, 443 F. Supp. 3d at 493. Open-ended continuity exists "when the alleged scheme 'by its nature projects into the future with a threat of repetition.'" *Id.* (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241 (1989)). This is "generally presumed when the enterprise's business is primarily or inherently unlawful." *Id.* (quoting *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008)). Finally, it will "still exist even when the enterprise's business is legitimate if 'the predicate acts were the regular way of operating that business.'" *Id.* (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999)). In this case, Plaintiffs have alleged that predicate acts are the way in which Defendants operate their business, since PHEAA has admitted "it lacked any documents proving National Collegiate's Trusts own any loans over which it has collected." (Compl. ¶ 55).

3.  The Complaint Alleges a Distinct Enterprise.

Contrary to Defendants' arguments (Rodenburg Ltr., 4; Trusts Ltr., 4) the Complaint sufficiently alleges an enterprise distinct from the alleged predicate acts. As an initial matter, "an association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009). While there is a "distinctness" requirement for pleading the existence of an enterprise, the Supreme Court has recognized "that the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise "may in particular cases coalesce." *Id.* at 947. "An association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *United States v. Granton*, 704 F. App'x 1, 5 (2d Cir. 2017) (quoting *Boyle*, 556 U.S. at 946). Here, Plaintiffs have sufficiently alleged a purpose (debt collection), relationships among those associated with the enterprise, and longevity. That is all that is required.

Additionally, the alleged enterprise consisting of the TSI Network has a distinct existence. It would exist even if the Trusts never existed, as TSI has other creditor clients, and Plaintiffs do not plead that literally all TSI Network collections are unlawful, only those pertaining to the Trusts. Likewise, the alleged enterprise consisting of the Trusts would exist for a lawful purpose if the Schedules and other key proof documents had been properly preserved, which further underscores the distinctness of the enterprise from the alleged pattern of racketeering.

4.  The Complaint Alleges Eaton Group Participated in the Enterprise

Eaton Group argues that the Complaint fails to allege it participated in the enterprise. (Eaton Ltr., 5). The premise of Eaton Group's argument is that as a law firm rendering services, Eaton Group was not involved in the "operation or management" of the alleged enterprise. But there is "no blanket immunity for professionals regardless of their involvement in a criminal enterprise, and other cases suggest that, where professionals are alleged to have exceeded the mere rendering of legitimate professional services, the 'operation or management' requirement will be

Hon. Paul G. Gardephe
Oct. 12, 2023
Page 8

pleaded adequately." *JSC Foreign Econ. Ass'n Technostroyexport v. Weiss*, No. 06-cv-6095, 2007 U.S. Dist. LEXIS 28954, at *8 (S.D.N.Y. Apr. 18, 2007) (Koeltl, J.) (collecting cases).

Here, Plaintiffs have alleged that Eaton Group was engaged in a practice of sending fraudulent collection letters, which is more than enough to plead Eaton Group's participation in the enterprise, particularly for purposes of a motion to dismiss. *Id.*

5. The Complaint Alleges RICO Injury

Defendants are also wrong that the Complaint fails to allege RICO injury. (TSI Ltr., 5; ACI Ltr., 4; Trusts Ltr., 3; Eaton Ltr., 5). First, the Trusts themselves acknowledge that Plaintiff Vice's payment of $10,000 constitutes RICO injury (they contend it is time-barred, but the statute of limitations has been tolled by Defendants' fraudulent concealment, *see infra*). Second, the Complaint clearly alleges that Plaintiffs Vice and Seaman both sent dispute letters, which means that Defendants are simply wrong when they argue that Plaintiffs have not denied the debts. (*See* Compl. ¶¶ 86, 113–117).

6. The RICO Claims Are Timely

PHEAA and the Trusts argue that Plaintiffs' RICO claims are untimely because they were placed on "inquiry notice" since 2017, due to the publication of a New York Times article and findings by the CFPB. (PHEAA Ltr., 3; Trusts Ltr., 4). But Plaintiffs' claims are subject to equitable tolling due to Defendants' fraudulent concealment. *Edmar Fin. Co., LLC v. Currenex, Inc.*, No. 21-cv-6598, 2023 U.S. Dist. LEXIS 87620, at *54–55 & n.216 (S.D.N.Y. May 18, 2023) (Kaplan, J.) (citing *State of New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)). Defendants' ongoing and continuing misrepresentations about the collectability of debts are more than sufficient to defeat a statute of limitations defense at the pleading stage. (*See* Part I, *supra*).

**C. The GBL Claims Are Well Pleaded**

1. The GBL Applies Here Because The Facts Have a Connection To New York

Defendants are wrong that New York's GBL cannot apply here because none of the collections at bar took place in New York. (PHEAA Ltr., 4–5; Trusts Ltr., 3–4; TSI Ltr., 4; Rodenburg Ltr., 2–3; Eaton Ltr., 4; ACI Ltr., 3). Defendants misstate the controlling law on GBL territorial scope in this circuit.

Under controlling Second Circuit precedent, a GBL claim is well pleaded where "some part of the underlying transaction occurred in New York State." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 124 (2d Cir. 2013) (quote, brackets, and ellipsis omitted). [10] Here, that standard is easily met, as the key transactions underlying Defendants' scheme took place in New York, and each perpetuation of Defendants' scheme is forever connected to New York. (*See* Part I, *supra*). Defendants argument relies on abrogated authority that *Cruz* expressly rejects. (*See* Trusts Ltr., 3–4; TSI Ltr., 4; Rodenburg Ltr., 2–3; Eaton Ltr., 4; ACI Ltr., 3 (citing *Goshen v. Mut. Life Ins. Co.*

---

[10] Notably, only one of the Defendants even saw fit to bring *Cruz* to the Court's attention. (*See* Rodenburg Ltr., 3).

*of N.Y.*, 98 N.Y.2d 314, 324 (2002))). In *Cruz*, the Second Circuit warned against what Defendants ask this Court to do here—construe *Goshen* as imposing a narrow view of GBL's scope.

Post-*Cruz* courts have applied the GBL in cases where the facts bore fewer connections to New York than do those here. *Voronina v. Scores Holding Co.*, No. 16-cv-2477, 2017 U.S. Dist. LEXIS 1858, at *12–13 (S.D.N.Y. Jan. 5, 2017 (GBL applied, even though only two of the sixteen defendants were in New York). The *Voronina* defendants (like Defendants here) argued that *Goshen* foreclosed application of the GBL, but Judge Kaplan stressed that *Cruz* had actually foreclosed this reading of *Goshen*. *Voronina*, 2017 U.S. Dist. LEXIS 1858, at *12; *accord, e.g.*, *Polk v. DelGatto, Inc.*, No. 21 Civ. 129 (PAE), 2021 U.S. Dist. LEXIS 137764, at *21–25 (S.D.N.Y. July 23, 2021) (Engelmayer, J.). Here, the facts of New York connection are even stronger. In addition to one of the Network Firm Defendants here (ACI) being New York-based, the key transactions underlying Defendants' scheme took place on Wall Street. (*See* Part I, *supra*).[11]

### 2. Plaintiffs Suffered Injuries For GBL Purposes

Defendants are wrong that New York's GBL cannot apply here on the grounds that no Plaintiff suffered injury for GBL purposes. (PHEAA Ltr., 4–5; Trusts Ltr., 3–4; TSI Ltr., 4; Rodenburg Ltr., 2–3; Eaton Ltr., 4; ACI Ltr., 3). In a related case, this Court found that harms like the emotional trauma of being subject to collection, or the cost of defending oneself against collection efforts, are sufficient to satisfy the GBL's injury requirement. *Michelo v. Nat'l Collegiate Student Loan Trust 2007-2*, 419 F. Supp. 3d 668, 706 (S.D.N.Y. 2019) (Gardephe, J.).[12] Plaintiffs suffered similar harms here.

---

[11]  The other GBL cases Defendants cite are each distinguishable. *In re GE/CBPS Data Breach Litig.*, No. 20-cv-2903, 2021 U.S. Dist. LEXIS 146020, at *38 (S.D.N.Y. Aug. 4, 2021) (Failla, J.) (cited by PHEAA Ltr., 4) (the location of the underlying transactions could not be ascertained and could have occurred "in any number of other locations" outside New York); *Horn v. Med. Marijuana, Inc.*, 383 F. Supp. 3d 114, 128 (W.D.N.Y. 2019) (Geraci, J.) (cited by PHEAA Ltr., 4) (plaintiffs' residency in the state was their only connection to New York); *Miramontes v. Ralph Lauren Corp.*, No. 22-cv-04192, 2023 U.S. Dist. LEXIS 78991, at *2 (S.D.N.Y. May 5, 2023) (McMahon, J.) (cited by PHEAA Ltr., 4) (plaintiff had previously argued that the underlying transaction was in other states, estopping him from arguing that the underlying transaction was in New York); *McVetty v. Tomtom N. Am., Inc.*, No. 19-cv-4908, 2021 U.S. Dist. LEXIS 47922, at *8–9 (S.D.N.Y. Mar. 13, 2021) (Roman, J.) (cited by PHEAA Ltr., 4; Trusts Ltr., 3) (only connection to New York was plaintiffs' residency in the state); *Springer v. U.S. Bank Nat'l Ass'n*, No. 15-cv-1107, 2015 U.S. Dist. LEXIS 171734, at *34 (S.D.N.Y. Dec. 23, 2015) (Koeltl, J.) (cited by Rodenburg Ltr., 3) (plaintiffs' own fact allegations showed that the underlying transactions occurred in Las Vegas rather than New York); *Kaplan Grp. Invs. LLC v. A.S.A.P. Logistics Ltd.*, No. 22-cv-7326, 2023 U.S. Dist. LEXIS 170378, at * (S.D.N.Y. Sep. 25, 2023) (Oetken, J.) (cited by Eaton Ltr., 4) (only connection to New York was that defendants were technically a corporate domiciliary of the state).

[12]  TSI and ACI wrongly assert that Your Honor's decision in *Michelo* rejects any GBL injury that is based on "fear of future harm." (TSI Ltr., 4; ACI Ltr., 3 (discussing 419 F. Supp. 3d at 706)). This is a far departure from the Court's finding that a judgment debtor cannot satisfy GBL's injury

Hon. Paul G. Gardephe
Oct. 12, 2023
Page 10

Defendants also dispute *Michelo*'s finding that dismissal of GBL claims like these is not warranted simply because the plaintiff did not actively dispute the debt's validity. *Compare* PHEAA Ltr., 4–5; Trusts Ltr., 3–4; TSI Ltr., 4; Rodenburg Ltr., 2–3; Eaton Ltr., 4; ACI Ltr., 3 (relying on *Toohey v. Portfolio Recovery Assocs., LLC*, No. 15-cv-8098, 2016 U.S. Dist. LEXIS 111534, at *30–31 (S.D.N.Y. Aug. 22, 2016) (Daniels, J.))); *with Michelo*, 419 F. Supp. 3d at 707 n.23 (interpreting *Toohey*).

### 3.   Plaintiffs' GBL Claims Are Not Preempted By Any Other Law

Defendants incorrectly argue that, to the extent Plaintiffs' GBL claims are premised on injuries connected to credit-reporting of unprovable debts, these claims are preempted by the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (PHEAA Ltr., 4–5; Trusts Ltr., 3–4; TSI Ltr., 4; Rodenburg Ltr., 2–3; Eaton Ltr., 4; ACI Ltr., 3). FCRA preemption is meant to be "narrow[ly] applied, and Plaintiffs' GBL claims are not preempted because "Plaintiffs' claims under § 349 are broader than only asserting that Defendants violated their obligations to furnish information to consumer reporting agencies." *Aghaeepour v. N. Leasing Sys.*, 378 F. Supp. 3d 254, 270–71 (S.D.N.Y. 2019) (Roman, J.).

### D.   **Plaintiffs Have Individual Standing to Pursue FDCPA Claims and Class Standing to Pursue All State Law Claims**

While some defendants dispute that they are liable under the FDCPA, none of the Defendants challenge Plaintiffs' constitutional standing to assert the FDCPA claim. Because the issues raised under the FDCPA claim implicate the same set of concerns as those raised by each of the state law claims, Plaintiffs have class standing to raise all claims in the Complaint. (*See* Compl. ¶¶ 141–154 (FDCPA); ¶¶ 155–161 (New York's GBL); ¶¶ 162–171 (California's Rosenthal Fair Debt Collection Practices Act); ¶¶ 172–175 (unjust enrichment)).

"[I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant . . . and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) ("*NECA-IBEW*") (citations and internal quotation marks omitted) (emphasis added). Accordingly, Plaintiffs have standing to pursue all claims related to Defendants' unlawful initiation of debt collections (i) each Plaintiff personally suffered actual injury under FDCPA as a result of Defendants' unlawful initiation of debt collections and (ii) the state law claims of other members of the putative class implicate the same set of concerns—i.e., the unlawful initiation of debt collections.

Under *NECA-IBEW*, "the 'same set of concerns' are implicated and the named plaintiff has class standing where the claims of absent class members and the named plaintiff require similar

---

requirement based on potential of garnishment where no garnishment has been expressly threatened by the defendants. *Michelo*, 419 F. Supp. 3d at 706. That reasoning was based on a failure of causation. Plaintiffs' injuries here, including costs of defendant against wrongful collection, satisfy the GBL's injury requirement (as well as the damages requirement for any similar state statute and unjust enrichment claims). *See id.* at 714 n.29.

Hon. Paul G. Gardephe
Oct. 12, 2023
Page 11

inquiries and proof." *Moreno v. Deutsche Bank Am. Holding Corp.*, No. 15 Civ. 9936, 2017 U.S. Dist. LEXIS 143208, at *28–29 (S.D.N.Y. Sept. 5, 2017) (Schofield, J.) (finding that plaintiffs had class standing to bring ERISA claims with respect to funds in which they did not invest because "putative class members suffered similar harm—paying excessive fees, or being offered an unlawful lineup of investment options set by Defendants"); *see also Dennis v. JPMorgan Chase & Co.*, 345 F. Supp. 3d 122, 159 (S.D.N.Y. 2018) (Kaplan, J.) (finding plaintiff had class standing to bring antitrust claims for derivatives they did not purchase); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 156 (S.D.N.Y. 2017) (Stein, J.) (plaintiff had standing to pursue claims for investors in other funds because putative class members "were injured in the same manner"); *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1023-24 (S.D. Iowa 2009) ("[I]t would be premature to dismiss the [additional state] statutory claims simply because neither [named plaintiff] own mortgaged property in those jurisdictions.").

Plaintiffs' FDCPA claims arising from Defendants' unlaw initiation of debt collections require substantially similar inquiries and proof as the state law claims. Both the FDCPA claims and state law claims involve (1) Defendants' initiation of debt collections against Plaintiffs and other members of the class with the intent or ability to prove the claims of indebtedness; (2) the harm caused to Plaintiffs who had to spend money and time responding to Defendants' debt collection communications; and (3) the harm caused to Plaintiffs' credit ratings. (*Compare* Compl. ¶ 153, *with id.* ¶¶ 159, 170, 174). Accordingly, under *NECA-IBEW* and the above authorities, Plaintiffs have standing to bring all state law claims asserted in the Complaint.

### E. Plaintiffs' Case Belongs In This Court

1. The Facts Of The Fraud Here Have A Nexus In This District

SEC documents and Defendants' own submissions here show that the key facts of fraud are inherently and irrevocably tied to New York City. (*See* Part I, *supra*). If or when this case proceeds to trial, Defendants' attorneys here will rely on: (1) documents that the Trusts claim are Schedules created at the time of the Wall Street securitization process that created the Trusts, and (2) expert testimony from a Wall Street-based securities professional who avers that the preparation and custodying of the Schedules was consistent with Wall Street practices, *see, e.g.*, *Hoffman v. Transworld Sys.*, No. C18-1132, 2022 U.S. Dist. LEXIS 173501, at *13–15 (W.D. Wash. Sep. 26, 2022) (Trusts offer expert testimony by Wall Street executive to rebut claims that state-court collection suits in Washington violated state law and should be voided).

2. The Trusts, TSI, and the Network Firms Are Subject To New York Jurisdiction

"Pursuant to N.Y. C.P.L.R. § 301, a defendant is subject to personal jurisdiction if he is domiciled in New York, served with process in New York, or continuously and systematically does business in New York." *Reed v. Luxury Vacation Home LLC*, 632 F. Supp. 3d 489, 509 (S.D.N.Y. 2022) (Gardephe, J.) (quoting *Jonas v. Est. of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) (Stein, J.)). Additionally, "[s]pecific jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum, and the litigation results from injuries arising out of or relating to those activities." *Alfandary v. Nikko Asset Mgmt. Co.*, 337 F. Supp. 3d 343, 359 (S.D.N.Y. 2018) (Sweet, J.) (cited by TSI Ltr., 4).

Hon. Paul G. Gardephe
Oct. 12, 2023
Page 12

The Trusts are subject to jurisdiction in New York. Other litigation against the Trusts in New York shows that they continuously and systematically do business in New York, and have purposefully directed activities in New York, including by regularly suing individuals in local courts. *E.g.*, *Seaman*, 2023 U.S. Dist. LEXIS 173057, at \*6–7. TSI and the Network Firm it utilizes (Eaton, Rodenburg, ACI) are also subject to jurisdiction in New York. In addition to similar evidence of TSI's New York activities in *Seaman*, TSI is licensed by New York City as a debt collector.

In terms of due process analysis, the applicable standard for minimum contacts is whether a defendant "could foresee being haled into court" in the state containing the court where the complaint was filed. *Paxful, Inc. v. Strandberg*, No. 21-cv-03331, 2022 U.S. Dist. LEXIS 109894, at \*9 (S.D.N.Y. June 21, 2022) (Netburn, Mag. J.). The Trusts, TSI, and the Network Firms (Eaton, Rodenburg, ACI) should all have realized the possibility of litigation in New York upon reading the Trusts' purchase agreement. (*See* Part I, *supra*). Similarly, the NYAG regulatory action penalizing TSI would have further alerted defendants that participation in Trust collections could mean violations subject to litigation in a New York-based court. Finally the securitization on Wall Street underlying its acts on behalf of the Trusts, (Compl. ¶¶ 10, 160), satisfies the Supreme Court's June 2023 decision expanding the scope of which defendants may be sued in which jurisdictions. *Mallory v. Norfolk S. Ry.*, 143 S. Ct. 2028, 2049 (2023) (Alito, J., concurring).

### 3. The Southern District of New York is a Proper Venue

Venue is proper in the Southern District of New York under either 28 U.S.C. § 1391(b)(2) or § 1391(b)(3). Section 1391(b)(2) provides that an action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Here, the securitization of student loans in New York, (Compl. ¶¶ 10, 160), was a substantial part of the events giving rise to the claims, and therefore render venue appropriate. Even if they did not, then there would likely "no district in which an action may otherwise be brought," and venue would be proper in the Southern District so long as personal jurisdiction exists over a single defendant.

Nor would a transfer be appropriate. To determine whether a venue transfer is warranted, courts conduct a two part inquiry. "First, the court must determine whether the action sought to be transferred is one that 'might have been brought' in the transferee court." *In re Anadarko Petroleum Corp.*, No. 10-cv-05894, 2012 U.S. Dist. LEXIS 195126, at \*6–7 (S.D.N.Y. Mar. 19, 2012) (Gardephe, J.) (quoting *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006) (Mukasey, J.)). The second part of the inquiry considers the following factors: "(1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." *Id.* (quoting *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d at 394).

Here, the factors strongly weigh in favor of finding venue in the Southern District. Weight should be given to Plaintiffs' choice of forum, and there is already ongoing litigation here involving the same defendants, rendering litigation here inherently more convenient for witnesses

Hon. Paul G. Gardephe
Oct. 12, 2023
Page 13

and the parties. It also means that this forum has superior familiarity with the governing law (and how that law applies to the facts in this case).

Respectfully submitted,

By:  /s/ Joseph Delich
    Joseph Delich
    Stephen Lagos
    FREEDMAN NORMAND
      FRIEDLAND LLP
    99 Park Avenue, Suite 1910
    New York, New York 10016
    jdelich@fnf.law
    slagos@fnf.law

    Velvel (Devin) Freedman, Esq.
    FREEDMAN NORMAND
      FRIEDLAND LLP
    1 SE 3rd Ave., Suite 1240
    Miami, Florida 33131
    vel@fnf.law

    Gregory A. Frank (GF0531)
    Marvin L. Frank (MF1436)
    Asher Hawkins (AH2333)
    FRANK LLP
    305 Broadway, Suite 700
    New York, New York 10007
    Tel: (212) 682-1853
    Fax: (212) 682-1892
    info@frankllp.com

    Kyle W. Roche
    KYLE ROCHE P.A.
    260 Madison Avenue, 8th Fl.
    New York, NY 10016
    (T): (917) 909-8766

cc: all counsel (via ECF)