UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIO VICE, Individually and on Behalf of All Others Similarly Situated; and VICTORIA SEAMAN, Individually and On Behalf of All Others Similarly Situated,

              Plaintiffs,

        - against -

NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-1; TRANSWORLD SYSTEMS, INC., in Its Own Right and as Successor to NCO Financial Systems, Inc.; EGS FINANCIAL CARE INC., formerly known as NCO Financial Systems, Inc.; AMERICAN CORADIUS INTERNATIONAL, LLC; EATON GROUP ATTORNEYS, LLC; RODENBURG LAW FIRM; DOES COLLECTORS 1-1000; and PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY,

              Defendants.

**MEMORANDUM**
**OPINION & ORDER**

23 Civ. 6287 (PGG) (BCM)

PAUL G. GARDEPHE, U.S.D.J.:

In this putative class action, Plaintiffs Mario Vice and Victoria Seaman claim that Defendants – six student loan trusts, three debt servicers, and three law firms – conspired to "collect on alleged student loan debt that they do not own or is uncollectable."[1] (Cmplt. (Dkt. No. 1) ¶ 1) Plaintiffs assert claims for violations of the Fair Debt Collection Practices Act ("FDCPA"), the New York General Business Law ("GBL") § 349, California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), New York common law, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (Id. ¶¶ 141-200)

Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6). (Dkt. Nos. 61, 62, 64, 66, 69, 72)

In an August 29, 2025 Report and Recommendation ("R&R"), Magistrate Judge Barbara C. Moses recommends granting Defendants' motions to dismiss for lack of personal jurisdiction and for improper venue. (R&R (Dkt. No. 91) at 49)[2] Plaintiffs filed objections to the R&R on October 14, 2025 (Pltf. Obj. (Dkt. No. 94)), and Defendants filed responses to Plaintiffs' objections on November 25, 2025. (Def. Joint Resp. (Dkt. No. 98))

For the reasons stated below, Judge Moses's R&R will be adopted as set forth below, and Defendants' motions to dismiss will be granted pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3).

---

[1] The Complaint also asserts claims against 10,000 "Doe Collectors" who allegedly participated in the named defendants' misconduct. (Cmplt. (Dkt. No. 1) ¶ 36) None of the alleged "Doe Collectors" has been identified or served.

[2] The page numbers of documents referenced in this Opinion correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

1

## BACKGROUND

### I.     THE PARTIES

Plaintiffs Mario Vice and Victoria Seaman received debt collection letters from three law firms seeking recovery for alleged student loan debt.[3]  (R&R (Dkt. No. 91) at 2, 6-9) Plaintiff Vice resides in Louisiana, while Plaintiff Seaman resides in South Dakota.  (Id. at 2)

Plaintiffs name three groups of entities as Defendants:  (1) six student loan trusts (the "Defendant Trusts" or "Trusts"); (2) three debt servicing agencies; and (3) the three law firms.  (Id. at 3)

#### A.     Defendant Trusts

The Defendant Trusts consist of six Delaware statutory trusts.  (Id. (citing Cmplt. (Dkt. No. 1) ¶¶ 25-30))  These Trusts are (1) National Collegiate Student Loan Trust 2004-1 ("Trust 2004-1"), (2) National Collegiate Student Loan Trust 2004-2 ("Trust 2004-2"), (3) National Collegiate Student Loan Trust 2005-2  ("Trust 2005-2"), (4) National Collegiate Student Loan Trust 2006-1 ("Trust 2006-1"), (5) National Collegiate Student Loan Trust 2006-3 ("Trust 2006-3"), and (6) National Collegiate Student Loan Trust 2007-1 ("Trust 2007-1").  (Id.) Each Trust has designated Wilmington Trust Company, a Delaware corporation, as its trustee and agent for service of process.  (Id. at 3-5)  The Complaint asserts that "the Trusts do business

---

[3] The parties have not objected to the R&R's factual statement, and this Court finds no clear error in that portion of the R&R.  See Soley v. Wasserman, 823 F. Supp. 2d 221, 228 (S.D.N.Y. 2011) ("The Court will review for clear error those portions of the R&R to which the parties do not object." (citations and emphasis omitted)).  Accordingly, this Court adopts the "Background" section of the R&R in full.  See Silverman v. 3D Total Solutions, Inc., No. 18 Civ. 10231 (AT), 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true." (citation omitted)).

in New York." (Id. at 4; see also Cmplt. (Dkt. No. 1) ¶¶ 25-30 (alleging that each of the Trusts "does business in New York"))

The Defendant Trusts were "created between 2001 and 2007 as a part of a 'complex securitization process[,]' which included the sale, transfer, and assignment of thousands of student loans to a total of fifteen National Collegiate Student Loan Trusts." (R&R (Dkt. No. 91) at 3 (quoting Cmplt. (Dkt. No. 1) ¶¶ 3 n.2, 10, 50)) Private lenders, including JPMorgan Chase Bank and Bank of America, originated the underlying loans. (Id. (citing Cmplt. (Dkt. No. 1) ¶¶ 10, 50, 76-80, 96-99, 112, 114, 116)) "Plaintiffs allege there was 'poor or nonexistent record-keeping of who owed what to whom' during the securitization process." (Id. (quoting Cmplt. (Dkt. No. 1) ¶ 2)) As a result, "the Trusts 'failed to keep track of the thousands of loans and investment stakes' allegedly owned by each of them, such that they cannot now 'guarantee access to documentation evidencing a consumer's indebtedness.'" (Id. (internal citations omitted) (quoting Cmplt. (Dkt. No. 1) ¶¶ 2, 10, 48))

The Trusts now collectively hold an interest in 345,185 student loans, which amount to approximately $4 billion. (Id. (citing Cmplt. (Dkt. No. 1) ¶¶ 25-30)) The Trusts have no employees; they use debt servicing agencies and attorneys hired by those agencies to collect debt on their behalf. (Id (citing Cmplt. (Dkt. No. 1) ¶¶ 3, 51))

**B.**      **Defendant Debt Servicing Agencies**

The Trusts have hired three debt servicing agencies to collect student loan debt: (1) the Pennsylvania Higher Education Assistance Agency ("Pennsylvania Higher Education" or "the Agency"); (2) Transworld Systems, Inc. ("Transworld"); and (3) EGS Financial Care, Inc.

3

("EGS").[4] (Id. (citing Cmplt. (Dkt. No. 1) ¶¶ 31-32, 37)) Each of these agencies is named as a defendant in the Complaint.

The Pennsylvania Higher Education Assistance Agency serves as "the Trusts' 'initial servicer,' meaning that it makes the first attempt to 'collect[] alleged debts after student loans are determined to be in default.'" (Id. (alteration in original) (first quoting Cmplt. (Dkt. No. 1) ¶¶ 37, 53)) Pennsylvania Higher Education "is a 'public corporation, organized under the laws of the Commonwealth of Pennsylvania,'" with its principal place of business in Pennsylvania. (Id. (quoting Cmplt. (Dkt. No. 1) ¶ 37))

When Pennsylvania Higher Education does not succeed in collecting debt from a particular individual, it transfers that individual's "debt-collection account" to another debt servicing agency for additional collection efforts. (Id. at 5 (citing Cmplt. (Dkt. No. 1) ¶ 54)) At the time the Complaint was filed, the Agency transferred these accounts to Defendant Transworld. (Id.) Before November 1, 2014, Pennsylvania Higher Education transferred such accounts to Defendant EGS. (Id. (citing Cmplt. (Dkt. No. 1) ¶¶ 31, 54, 57))

Defendant Transworld is a California corporation with its principal place of business in Pennsylvania. (Id. (citing Cmplt. (Dkt. No. 1) ¶ 31)) It maintains offices in "'various other states including Georgia.'" (Id. (quoting Cmplt. (Dkt. No. 1) ¶ 31))

---

[4] Judge Moses and the parties generally refer to the Pennsylvania Higher Education Assistance Agency by its acronym, "PHEAA." The Complaint sometimes refers to Defendant EGS by its former name, "NCO Financial Systems, Inc." or "NCO." (See Cmplt. (Dkt. No. 1) ¶ 32 ("Defendant NCO Financial Systems, Inc., presently doing business as EGS Financial Care, Inc., is a Pennsylvania corporation that maintains offices at 50 Prudential Road, PO Box 100, Horsham, Pennsylvania 19044."))

4

Defendant EGS is a Pennsylvania corporation headquartered in Pennsylvania, and allegedly "'does business throughout the country, including in New York.'" (Id. (quoting Cmplt. (Dkt. No. 1) ¶ 32))

### C.    Defendant Law Firms

Transworld uses "'a nationwide network of debt-collection law firms and agencies'" to assist in its debt collection efforts, including the three law firms named as Defendants:  (1) American Coradius International, LLC ("Coradius"); (2) Eaton Group Attorneys, LLC ("Eaton"); and (3) the Rodenburg Law Firm ("Rodenburg").  (Id. at 3-5 (quoting Cmplt. (Dkt. No. 1) ¶ 31-32, 37, 59))  "Transworld is responsible for coordinating the [activities of the Law] Firms, which are not permitted to contact the Trusts directly.'"  (Id. at 5-6 (citing Cmplt. (Dkt. No. 1) ¶¶ 59, 61, 187(a)))

Defendant Coradius is a New York limited liability company headquartered in Buffalo, New York.  (Id. at 5 (citing Cmplt. (Dkt. No. 1) ¶ 35))  According to the Complaint, Coradius "'does business throughout the country, including in New York.'"  (Id. (quoting Cmplt. (Dkt. No. 1) ¶ 35))  Defendant Eaton is a limited liability company based in Louisiana. According to the Complaint, Eaton "'does business in New York.'"  (Id. (quoting Cmplt. (Dkt. No. 1) ¶ 33))  Finally, Defendant Rodenberg Law Firm is "'located' in Fargo, North Dakota, and 'does business in North Dakota, Minnesota, Montana, South Dakota[,] and Wyoming.'"  (Id. (quoting Cmplt. (Dkt. No. 1) ¶ 34)).

## II.    FACTS

### A.    The Alleged Fraudulent Debt Collection Scheme

The Complaint alleges that Defendants have been engaged in "a nationwide 'conspiracy to defraud' consumers – dating back to at least 2013 – by 'collecting on alleged

5

student loan debt that [D]efendants do not own or is uncollectable.'" (Id. at 9 (alterations omitted) (quoting Cmplt. (Dkt. No. 1) ¶¶ 1, 17, 183))

According to Plaintiffs, the Defendants have conspired to "take money from individuals whom Defendants accuse[] of [having] old student loan debts without any intent or ability to prove" (1) "they owned these debts," (2) that there is "evidence of collectability," or (3) that Defendants "could collect legally given the age of the alleged debt." (Id. at 2 (quotation marks omitted) (quoting Cmplt. (Dkt. No. 1) ¶ 17)) Plaintiffs go on to allege that Defendants do not have "'proof of [these individuals'] indebtedness'" because the Trusts "'fail[ed] to keep track of the thousands of loans and investment stakes' during the securitization process (from 2001 to 2007).'" (Id. at 11 (quoting Cmplt. (Dkt. No. 1) ¶¶ 10, 83, 84, 100, 101, 107, 121)) Plaintiffs further assert "that collection of some of the debts . . . [is] 'barred by the statute of limitations of applicable state law.'" (Id. (quoting Cmplt. (Dkt. No. 1) ¶¶ 85, 102, 109, 122); see also Cmplt. (Dkt. No. 1) ¶ 49 ("[T]he debts that Defendants claim National Collegiate's Trusts are owed are often so old – even if real – that they cannot be lawfully collected upon."))

Plaintiffs assert that Defendants' scheme has two components: "pre-litigation collection efforts" and state court litigation. (Id. at 10-11) In the first stage, the Defendant debt servicing agencies and the Defendant law firms attempt to collect student loan debts outside of court. (Id. (citing Cmplt. (Dkt. No. 1) ¶¶ 1, 18, 67-125)) Defendants' pre-litigation collection efforts generally involve "mailing dunning letters to consumers and reporting their debts to credit bureaus." (Id. (citing Cmplt. (Dkt. No. 1) ¶ 1, 18, 67-125)) The dunning letters sent by the Defendant law firms to consumers "are 'facilitate[d]' by Transworld and 'mass-produced by non-lawyers' using boilerplate templates and robo-signing." (Id. at 6 (alteration in original) (quoting Cmplt. (Dkt. No. 1) ¶¶ 47, 71-74, 82, 90, 95, 119))

6

If the pre-litigation collection efforts prove unsuccessful, the debt servicing agencies and law firms file lawsuits against individuals in state court on behalf of the Trusts. (See id. at 10 (citing, inter alia, Cmplt. (Dkt. No. 1) ¶¶ 7-16, 126-140)) According to Plaintiffs, the lawsuits involve illegal "state court litigation practices[,] . . . including the mass filing of false affidavits." (Id.)

Plaintiffs' allegations as to the nationwide debt collection conspiracy are premised largely on filings in regulatory proceedings. (Id. at 10-11) They cite to "'an investigation and settlement'" between the New York Attorney General's Office and Transworld; "an 'investigation and settlement' between the [Consumer Financial Protection Bureau] and Transworld; and an 'investigation and settlement' between the [Consumer Financial Protection Bureau] and the Trusts." (Id. (quoting Cmplt. (Dkt. No. 1) at 2)) As the R&R points out, however, there was no settlement between the Consumer Financial Protection Bureau ("CFPB") and the Trusts; "[t]he enforcement action [against the Trusts[ was recently terminated, in its entirety, without securing any relief for the challenged conduct." (Id. at 10-11 (citations omitted))

The Trust Defendants have not filed any state court debt collection proceedings against the named Plaintiffs. (Id. at 10 (citing Cmplt. (Dkt. No. 1) ¶¶ 1, 18, 67-125)) Accordingly, the Complaint challenges only Defendants' pre-litigation collection practices. (Id.)

### B.    Defendants' Attempts to Collect Debt from Vice

In 2017, Plaintiff Mario Vice "received a 'series of communications' from the Trusts' 'agents.'" (Id. at 6 (quoting Cmplt. (Dkt. No. 1) ¶ 91)) The Complaint does not state who contacted Vice at that time. (Id.)

According to the Complaint, Vice spent approximately $10,000 on legal services in responding to these 2017 "'communications.'" (Id.) Soon thereafter, "'the collection efforts ceased,' which Vice understood to mean that 'the debts asserted were not collectable.'" (Id. (quoting Cmplt. (Dkt. No. 1) ¶ 91)

In April and May 2023, however, Defendant Eaton sent Vice five letters "'demanding payment of money on debts allegedly owed to Trusts 2004-2, 2005-2, 2006-1, and 2006-3.'" (Id. (quoting Cmplt. (Dkt. No. 1) ¶¶ 75-80))) The Eaton letters state that the alleged debts arose out of student loans originated by JPMorgan Chase Bank, and that Vice had previously made payments related to these loans. (Id. (citing Cmplt. (Dkt. No. 1) ¶¶ 75-81))) The mailings further state that Vice is in default on these debts and owes the Trusts $128,253.27. (Id.) The Complaint alleges that Eaton sent him the 2023 mailings "'at the direction, express or implied, of Transworld.'" (Id. (quoting Cmplt. (Dkt. No. 1) ¶ 81))) Vice "does not deny that he took out student loans from Chase, nor [does he deny] that he was in default on his payments." (Id.)

According to the Complaint, the Eaton mailings were unlawful, "because neither it nor Transworld, on whose behalf it was acting, possessed 'proof that the named Trusts owned the alleged debts.'" (Id. (quoting Cmplt. (Dkt. No. 1) ¶¶ 83-84)) The Complaint further asserts that these 2023 collection attempts as to Vice were barred by the applicable state law statute of limitations. (Id.) The Complaint does not, however, "identify any relevant statute of limitations, the date on which it began to run, the date on which it expired, or the debt (or portion thereof) rendered uncollectable by the passage of time." (Id.)

Vice sent several responses to the Eaton mailings, in which he disputed the debts alleged by Eaton and demanded proof of the alleged underlying debts. (Id. at 7 (citing Cmplt.

(Dkt. No. 1) ¶ 86)  In June 1, 2023 correspondence, Eaton provided supporting documentation to Vice concerning debts he allegedly owed to Trusts 2004-2, 2006-1, and 2006-3.  (Id. (citing Cmplt. (Dkt. No. 1) ¶ 87))  The Complaint asserts that the documents Eaton provided do not demonstrate that Vice owed the alleged debts, and that some of the documents Eaton provided concern another individual.  (Id. (citing Cmplt. (Dkt. No. 1) ¶ 88)

Although Vice did not pay any of the debts referenced in the Eaton letters, he complains that it "'took substantial time from his personal and professional life'" to respond to Eaton's collection efforts.  (Id. (quoting Cmplt. (Dkt. No. 1) ¶ 86))  The Complaint further asserts that Vice "'constantly worries about the threat of the debts alleged,' and as a result 'is unable to fully enjoy his non-working time.'"  (Id. (quoting (Dkt. No. 1) ¶ 92))

### C.   Defendants' Attempts to Collect Debt from Seaman

On March 7, 2022, Plaintiff Victoria Seaman received four letters from Coradius demanding payment of debts she allegedly owed to Trusts 2004-1, 2004-2, 2006-3, and 2007-1. (Id. (citing Cmplt. (Dkt. No. 1) ¶¶ 93, 96-99))  In these mailings, Coradius asserts that the alleged debts stem from student loans originated by Bank of America, for which Seaman had made some payments in the past.  (Id.)  The dunning letters also assert that Seaman is in default on the loans and owes the Trusts $65,833.19.  (Id. at 7-8)  Seaman contends that Coradius sent her the 2023 mailings "'at the direction, express or implied, of Transworld.'"  (Id. at 7 (quoting Cmplt. (Dkt. No. 1) ¶ 94))  Seaman "does not deny that she took out student loans from [Bank] of [America] []or that she was in default on her payments."  (Id.)

As with Vice, the Complaint asserts that the dunning letters sent to Seaman were unlawful because "'Defendants were unable to prove current ownership by the named Trusts of any of the alleged loans.'"  (Id. at 8 (quoting Cmplt. (Dkt. No. 1) ¶ 101))  According to Seaman,

9

the Coradius 2022 collection attempts were also barred by the applicable state law statute of limitations. (Id. (citing Cmplt. (Dkt. No. 1) ¶ 102) As with Vice, the Complaint "does not identify any relevant statute of limitations, the date on which it began to run, the date on which it expired, or the debt (or portion thereof) rendered uncollectable by the passage of time." (Id.)

After receiving the Coradius letters on March 7, 2022, Seaman spoke by telephone on multiple occasions with Coradius employees. (Id. (citing Cmplt. (Dkt. No. 1) ¶ 103)) In these calls, Seaman disputed Coradius's "'right to collect anything from her for the Trusts' benefit.'"[5] (Id.)

On July 31, 2022, Seaman learned that Coradius had filed negative credit report entries against her based on the debts she allegedly owed to the Trust Defendants. (Id. (citing Cmplt. (Dkt. No. 1) ¶ 104)) The Complaint asserts that Transworld directed Coradius to file these negative credit report entries. (Id. (citing Cmplt. (Dkt. No. 1) ¶ 105)) Seaman complained to the CFPB about these entries, "'demand[ing]'" that the CFPB ensure that the entries be removed. (Id. (alteration in original) (quoting Cmplt. (Dkt. No. 1) ¶ 110))

On August 4, 2022, the negative entries filed by Coradius were removed from Seaman's credit line. (Id.) That same day, Coradius sent a letter to Seaman stating "that [her] account was closed and that the firm had 'removed [the] tradeline.'"[6] (Id. (second alteration in original) (quoting Cmplt. (Dkt. No. 1) ¶ 111))

---

[5] The Complaint does not indicate whether Seaman or Coradius initiated these calls. (Id.)

[6] "[T]radeline" is "a term used by credit reporting agencies to describe credit accounts listed on your credit report. For each account you have, there is a separate tradeline, which includes information about the creditor and the debt. The information included in your tradelines is primarily used to calculate your credit scores." Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2, Nos. 18 Civ. 1781 (PGG) (BCM), 18 Civ. 7692 (PGG) (BCM), 2023 WL 6290622, at *6 n.3 (S.D.N.Y. Sept. 27, 2023) (quotation marks and citations omitted).

10

On September 15, 2022, Seaman began receiving dunning letters from the Rodenburg Law Firm. (Id. (citing Cmplt. (Dkt. No. 1) ¶ 112)) In a September 15, 2022 letter to Seaman, Rodenburg demanded payment for debts Seaman allegedly owed to Trust 2007-1. In a September 22, 2022 letter, Rodenburg demanded that Seaman pay debts owed to Trust 2004-1. And in a February 1, 2023 letter, Rodenburg demanded that Seaman pay debts owed to owed to Trusts 2004-1 and 2004-2. (Id. at 8-9 (citing Cmplt. (Dkt. No. 1) ¶ 112, 114, 116)) Rodenburg's three letters asserted that Seaman owed the Trusts $41,239.03 based on loans originated by Bank of America. (Id. at 9)

As with the Coradius letters sent to Seaman, the Complaint asserts that Rodenburg sent Seaman these collection letters "'at the direction, express or implied, of Transworld.'" (Id. (quoting Cmplt. (Dkt. No. 1) ¶ 118)) The Complaint further asserts that Rodenburg had no proof that the Trusts owned Seaman's debt, and that Rodenburg's debt collection efforts were barred by the applicable state law statute of limitations. (Id. (citing Cmplt. (Dkt. No. 1) ¶¶ 121-22)) As with Vice, the Complaint does not specify the relevant statute of limitations.

After receiving the dunning letters from Rodenburg, Seaman sent correspondence to Rodenburg disputing that the Trusts had any right to collect upon the debts alleged by Rodenburg. (Id. (citing Cmplt. (Dkt. No. 1) ¶¶ 113, 115, 117)) Rodenburg did not respond to Seaman's letters. (Id. (citing Cmplt. (Dkt. No. 1) ¶¶ 117 & n.17)) Seaman also complained to the CFPB about Rodenburg's collection letters. (Id. (quoting Cmplt. (Dkt. No. 1) ¶¶ 113, 115, 117))

The Complaint further alleges that Seaman "'took substantial time from her personal and professional life to respond to (1) the collection letters sent by [Coradius], (2) the

11

negative credit report entries submitted by [Coradius], and (3) the collection letters sent by Rodenburg.'" (Id. (quoting Cmplt. (Dkt. No. 1) ¶ 123)) Seaman's credit score also dropped by fifteen points following Coradius's credit report entries. (Id. (citing Cmplt. (Dkt. No. 1) ¶ 124)) The Complaint asserts that Seaman's credit score "ha[s] not 'fully recovered,'" and that the negative credit reports have "'permanently harm[ed] her ability to obtain credit in the future, including for a planned home purchase.'" (Id.) Seaman also has trouble sleeping because she worries that Defendants will resume their collection attempts at some point. (Id. (citing Cmplt. (Dkt. No. 1) ¶ 125))

III.    **PROCEDURAL HISTORY**

The Complaint was filed on July 20, 2023, and asserts claims for (1) violations of the Fair Debt Collection Practices Act against Transworld, EGS, Eaton, Rodenburg, and Coradius; (2) violations of New York General Business Law § 349 against all Defendants; (3) violations of California's Rosenthal Act by Transworld and EGS; (4) unjust enrichment against Transworld, EGS, Eaton, Rodenburg and Coradius; and (5) violations of RICO as against all Defendants.[7] ((Cmplt. (Dkt. No. 1)) ¶¶ 141-200)

On July 24, 2023, this Court accepted the instant case as related to Seaman et al. v. National Collegiate Student Loan Trust 2007-2, et al., No. 18-CV-1781 (PGG) (BCM) (S.D.N.Y.) ("Seaman"). (July 24, 2023 Minute Entry) That same day, this Court referred the case to Magistrate Judge Moses for general pretrial supervision. (Order of Ref. (Dkt. No. 4))

On February 16, 2024, Defendants moved to dismiss. (Mots. (Dkt. No. 61, 62, 64, 66, 69, 72)) Defendants contend, inter alia, that the Complaint should be dismissed for lack

---

[7] The Complaint also purports to allege violations of the FDCPA and Rosenthal Act as against "NCO." (See id. at 32, 35) But NCO is not named as a defendant in the Complaint, which merely references NCO Financial Systems, Inc. as a predecessor of EGS. (Id. at 1-2)

12

of standing, improper venue, lack of personal jurisdiction, and failure to state a claim. (See MTD Brs. (Dkt. No. 65, 67-68, 71, 74); see also R&R (Dkt. No. 91) at 14 (listing the Rule 12 motions brought by each Defendant)) Plaintiffs filed their opposition to the motions to dismiss on April 12, 2024 (Dkt. No. 75), and Defendants submitted replies on May 10, 2024. (Dkt. Nos. 76-82)

On December 6, 2024, this Court referred Defendants' motions to Judge Moses for an R&R. (Am. Order of Ref. (Dkt. No. 85)) In an August 29, 2025 R&R, Judge Moses recommends that (1) Plaintiffs' claims against the Trust Defendants, Pennsylvania Higher Education, Eaton, and Rodenberg be dismissed for lack of personal jurisdiction; and (2) that all claims be dismissed for improper venue. (See R&R (Dkt. No. 91) at 49)

In their October 14, 2025 objections, Plaintiffs contend that Judge Moses erred in concluding that (1) this Court lacks personal jurisdiction over the Trust Defendants, Pennsylvania Higher Education, Eaton, and Rodenberg; and (2) venue is improper as to all claims. (Pltf. Obj. (Dkt. No. 94)) Defendants submitted a joint response to Plaintiffs' objections on November 25, 2025. (Def. Resp. (Dkt. No. 98))

## DISCUSSION

## I.    REVIEW OF A MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Where a timely objection has been made to a magistrate judge's R&R, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "Where a litigant's objections take 'issue with a specific legal conclusion in the report and recommendation,' they should be considered de novo, even if they repeat an argument raised before a magistrate judge." Nambiar v. Cent. Orthopedic Grp., LLP, 158 F.4th 349, 361 (2d Cir.

13

2025) (quoting <u>Miller v. Brightstar Asia, Ltd.</u>, 43 F.4th 112, 121 (2d Cir. 2022)). "[A] litigant objecting to an R&R may not simply rest on the briefs considered by the magistrate judge[,] [however]; she must lodge a specific objection to some specific aspect of the R&R." <u>Id.</u>

"[A] district court may review a report and recommendation for clear error when a party's 'objections are nonspecific or merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition.'" <u>Knight v. City of New York</u>, 164 F.4th 173, 177 (2d Cir. 2026) (quoting <u>Nambiar</u>, 158 F.4th at 361). Moreover, "[t]he district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous." <u>Burke v. Verizon Comms., Inc.</u>, 661 F. Supp. 3d 277, 281-82 (S.D.N.Y. 2023) (quotation marks and citations omitted). A decision is "clearly erroneous" where, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." <u>United States v. Snow</u>, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

"Courts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." <u>Lesser v. TD Bank, N.A.</u>, 463 F. Supp. 3d 438, 445 (S.D.N.Y. 2020) (alteration omitted) (quoting <u>Tavares v. City of New York</u>, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011)). "The submission of new evidence following [a magistrate judge's R&R] is merited only in rare cases, where the party objecting . . . has offered a most compelling reason for the late production of such evidence, or a compelling justification for [the] failure to present such evidence to the magistrate judge." <u>Fischer v. Forrest</u>, 286 F. Supp. 3d 590, 603 (S.D.N.Y. 2018), <u>aff'd</u>, 968 F.3d 216 (2d Cir. 2020) (quotation marks and citations omitted).

14

Similarly, "'a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate [judge] but were not.'" Wilson v. Lamanna, No. 21 Civ. 10714 (AT) (OTW), 2026 WL 282348, at *1 (S.D.N.Y. Feb. 3, 2026) (alteration in original) (further citations omitted in original) (quoting United States v. Gladden, 394 F. Supp. 465, 480 (S.D.N.Y. 2019)).

## II.    PERSONAL JURISDICTION

Judge Moses recommends that Plaintiffs' claims against the Trust Defendants, the Pennsylvania Higher Education Assistance Agency, Rodenburg, and Eaton be dismissed for lack of personal jurisdiction.[8]  (R&R (Dkt. No. 91) at 21-41)  Plaintiffs' objections challenge Judge Moses's personal jurisdiction analysis.  (Pltf. Obj. (Dkt. No. 94) at **11-16**)

---

[8] In her R&R, Judge Moses addresses Defendants' personal jurisdiction and venue arguments and does not reach Defendants' remaining arguments – under Rule 12(b)(1) and 12(b)(6) – in support of their motions to dismiss.  (R&R (Dkt. No. 91) at 16-17 (citing, inter alia, Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007); Luxexpress 2016 Corp. v. Gov't of Ukraine, 2018 WL 1626143, 15-CV-4880 (VSB), at *3 (S.D.N.Y. Mar. 30, 2018))) Because no party has objected to this section of Judge Moses's R&R, it will be reviewed only for clear error. See Burke, 661 F. Supp. 3d at 281-82 (where no objection is made to a portion of an R&R, that portion of the R&R is subject to clear error review).

In her R&R, Judge Moses acknowledges that

[w]hile "jurisdictional questions ordinarily must precede merits determinations in dispositional order," Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007), "there is no mandatory 'sequencing of jurisdictional issues.'" Id. (quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 575, 584 (1999)). Consequently, while [a court] may not reach defendants' Rule 12(b)(6) motions without first considering the non-merits "threshold issues" raised by their Rule 12(b)(1), Rule 12(b)(2), and Rule 12(b)(3) motions, it is free to approach those threshold issues in whatever order is likely to be the most efficient. See Sinochem, 549 U.S. at 436 (observing that if the court "can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground," but that where [subject matter or personal] jurisdiction was "difficult to determine," it was appropriate for the court to "take[] the less burdensome course" by dismissing on forum non conveniens grounds); Luxexpress 2016 Corp. v. Gov't of Ukraine, 2018 WL 1626143, at *3 (S.D.N.Y. Mar. 30, 2018) ("For example, a district court may decide a 'challenge to venue before addressing the challenge to subject-

15

A.    **Legal Standards**

"On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction." BWP Media v. Hollywood Fan Sites, LLC, 69 F. Supp. 3d 342, 349 (S.D.N.Y. 2014) (citing MacDermid, Inc. v. Deiter, 702 F.3d 725, 727 (2d Cir. 2012)).  The nature of this burden "'varies depending on the procedural posture of the litigation.'" Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).  Prior to discovery, a plaintiff may carry the burden "by pleading in good faith . . . legally sufficient allegations of jurisdiction.  At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations." Id. (citing Fed. R. Civ. P. 11).  "A plaintiff can make this showing through his 'own affidavits and supporting materials' . . . containing 'an averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendant.'" Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (alteration and second omission in original) (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)).

Accordingly, in resolving a motion to dismiss for lack of personal jurisdiction, a court may consider material outside the pleadings.  Any such proof must be construed "'in the light most favorable to plaintiffs, resolving all doubts in their favor.'" S. New England Tel. Co.

---

matter jurisdiction' in the interests of adjudicative efficiency.") (quoting Brodt v. Cty. of Harford, 10 F. Supp. 3d 198, 200 (D.D.C. 2014)).

(R&R (Dkt. No. 91) at 16-17 (alterations and emphases in original))

Here, Judge Moses concludes that "it is most efficient . . . to begin with personal jurisdiction . . . and then proceed to consider venue." (Id. at 17)  This Court finds no error in Judge Moses's analysis. See Pablo Star Ltd. v. Welsh Government, 170 F. Supp. 3d 597, 602 (S.D.N.Y. 2016) ("'[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits' in the interests of judicial restraint and judicial economy." (quoting Sinochem, 549 U.S. at 431)).

16

v. Glob. NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010) (quoting Porina v. Marward Shipping Co., 521 F.3d 122, 126 (2d Cir. 2008)).  A court will not "draw argumentative inferences in the plaintiff's favor or accept as true a legal conclusion couched as a factual allegation[, however]." SEC v. Passos, 760 F. Supp. 3d 95, 108 (S.D.N.Y. 2024) (quotation marks, citation, and alterations omitted)

"To allege personal jurisdiction over a defendant, group pleading is not permitted. Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant." In re Aegean Marine Petroleum Network, Inc. Sec. Litig., 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) (citing Famular v. Whirlpool Corp., No. 16 CV 944 (VB), 2017 WL 2470844, at *2 (S.D.N.Y. June 7, 2017)).

Whether a federal court may exercise personal jurisdiction over a defendant turns on the "satisfaction of three primary requirements." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59 (2d Cir. 2012).  "'First, the plaintiff's service of process upon the defendant must have been procedurally proper.  Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective. . . . Third, the exercise of personal jurisdiction must comport with constitutional due process principles.'" Waldman v. Palestine Liberation Org., 835 F.3d 317, 327 (2d Cir. 2016) (omission in original) (quoting Licci, 673 F.3d at 59-60).

"A federal statute or the law of the state in which the court is located can provide the statutory basis for personal jurisdiction." Broumand v. Joseph, 522 F. Supp. 3d 8, 15 (S.D.N.Y. 2021) (quotation marks and citation omitted).  "[W]here a federal statute authorizes nationwide service of process, the court may generally exercise personal jurisdiction, consistent with due process, over a properly served defendant who resides in the United States." Orient

17

Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd., 808 F. Supp. 3d 609, 617 (S.D.N.Y. 2025) (citations omitted); see also NLRB v. Universal Smart Conts., LLC, 166 F.4th 304, 314-15 (2d Cir. 2026) (Fed. R. Civ. P. 4(k)(1)(C) authorizes a federal court to exercise jurisdiction when "'authorized by a federal statute'"). On the other hand, "[i]n a federal question case, where the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if [an] applicable federal statute does not provide for national service of process." Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004) (citing PDK Labs., Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997)).

B.    **Analysis**

Judge Moses recommends that this Court dismiss Plaintiffs' claims against the Trust Defendants, Pennsylvania Higher Education, Eaton, and Rodenburg (the "Non-Domiciliary Defendants") for lack of personal jurisdiction. (R&R (Dkt. No. 91) at 21-41) In this regard, Judge Moses finds that these Defendants "are all 'non-domiciliaries' of New York, and consequently are not subject to the general jurisdiction of this Court." (Id. at 21) She further concludes that this Court likewise lacks specific jurisdiction over these Defendants. (Id. at 21-41) In so finding, Judge Moses concludes that neither of the two statutes invoked by Plaintiffs – N.Y. C.P.L.R. § 302(a) and 18 U.S.C. § 1965(b) – authorize this Court to exercise personal jurisdiction over the Non-Domiciliary Defendants. (Id.; see also Pltf. Opp. (Dkt. No. 75) at 62-65 (arguing that these statutes authorize the Court to exercise personal jurisdiction over the Non-Domiciliary Defendants)

1.    **General Jurisdiction under C.P.L.R. § 301**

As noted above, Judge Moses finds that "[t]he Trust Defendants, [Pennsylvania Higher Education], Eaton, and Rodenburg are all 'non-domiciliaries' of New York, and

18

consequently are not subject to the general jurisdiction of this Court." (R&R (Dkt. No. 91) at 21)
Because there is no objection to this finding, it is reviewed only for clear error. See Burke, 661
F. Supp. 3d at 281-82.

"In New York, general jurisdiction is governed by N.Y. CPLR § 301."
Thackurdeen v. Duke Univ., 130 F. Supp. 3d 792, 798-99 (S.D.N.Y. 2015). "Under N.Y. CPLR
§ 301, a court may exercise 'general jurisdiction' over an entity that is headquartered or
incorporated in, or maintains its principal place of business, in the forum and is therefore 'at
home.'" Siasia v. Fed'n Internationale de Football Ass'n, No. 21 Civ. 6516 (AKH), 2021 WL
5042974, at *2 (S.D.N.Y. Oct. 29, 2021), aff'd, No. 22-72, 2023 WL 405762 (2d Cir. Jan. 26,
2023) (quoting Daimler AG v. Bauman, 571 U.S. 117, 137-39 (2014)).

Moreover, for a court "[t]o exercise general personal jurisdiction over a foreign
corporation under [C.P.L.R. § 301]," " the defendant must be engaged in such a continuous and
systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in
this jurisdiction." Lear v. Royal Caribbean Cruises Ltd., No. 20 Civ. 4660 (GHW), 2021 WL
1299489, at *4 (S.D.N.Y. Apr. 7, 2021) (quotation marks and citation omitted); see id. (Section
301 "allows courts in New York to exercise general personal jurisdiction over individuals [or
entities] who are domiciled in New York, have a physical presence in New York, . . . consent to
New York's exercise of jurisdiction, or . . . 'do business' in New York" (quotation marks,
citation, and alteration omitted)). "Occasional or casual business in New York does not confer
general jurisdiction in New York such that a foreign corporation may be sued in New York on
causes of action that are wholly unrelated to its activities in New York." Phillips v. Reed Grp.,
Ltd., 955 F. Supp. 2d 201, 226 (S.D.N.Y. 2013); see also Wiwa v. Royal Dutch Petroleum Co.,
226 F.3d 88, 95 (2d Cir. 2000) ("In order to establish that this standard is met, a plaintiff must

19

show that a defendant engaged in continuous, permanent, and substantial activity in New York." (quotation marks and citation omitted)).

Here, Plaintiffs have not alleged that the Trust Defendants, Pennsylvania Higher Education, Eaton, or Rodenburg are domiciled in New York by virtue of their headquarters, place of incorporation, or principal place of business. Nor have Plaintiffs alleged that the Non-Domiciliary Defendants are "engaged in such a continuous and systematic course of doing business in New York as to warrant a finding of its presence in the jurisdiction." Mazloum v. Int'l Comm. Corp., 829 F. Supp. 2d 223, 228 (S.D.N.Y. 2011) (quotation marks and citations omitted). Accordingly, this Court finds no error in Judge Moses's conclusion that the Trust Defendants, Pennsylvania Higher Education, Eaton, and Rodenburg "are not subject to the general jurisdiction of this Court." (R&R (Dkt. No. 91) at 21)

### 2. Specific Jurisdiction under C.P.L.R. § 302(a)(1) Based on "Defendants' Individual Business Contacts"

Judge Moses finds that this Court lacks specific jurisdiction over the Trust Defendants, Pennsylvania Higher Education, Rodenberg, and Eaton under N.Y. C.P.L.R. § 302(a) – New York's long-arm statute – concluding that the Non-Domiciliary Defendants' "individual business contacts" with New York are insufficient to justify the exercise of specific jurisdiction. (See id. at 21-29) Because Plaintiffs have raised specific and timely objections to this finding (see Pltf. Obj. (Dkt. No. 94) at 12-16), the Court reviews this issue de novo. See Nambiar, 158 F.4th at 361.

As Judge Moses notes, "New York's long-arm statute provides for specific jurisdiction over certain non-domiciliaries." Mazloum, 829 F. Supp. 2d at 228 (citing N.Y. C.P.L.R. § 302(a)). For example, C.P.L.R. § 302(a)(1) authorizes the exercise of personal jurisdiction over a non-domiciliary that "transacts any business within the state or contracts

anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'arises from' such a business transaction." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (citation and alterations omitted).

Under the first prong of this test, "[c]ourts look to 'the totality of the defendant's activities within the forum' to determine whether a defendant has 'transact[ed] business' in such a way that it constitutes 'purposeful activity satisfying the first part of the test.'" Prince v. Intercept, 634 F. Supp. 3d 114, 129 (S.D.N.Y. 2022) (second alteration in original) (quoting Best Van Lines, 490 F.3d at 246); see also Ehrenfeld v. Bin Mahfouz, 9 N.Y.3d 501, 508 (2007) (a defendant "transacts business" within the meaning of C.P.L.R. § 302(a)(1) when it "purposefully avails itself of the privilege of conducting activities within [New York]"). "'Random,' 'fortuitous,' or 'attenuated' contacts will not be sufficient." Hill v. HSBC Bank plc, 207 F. Supp. 3d 333, 338 (S.D.N.Y. 2016) (citation omitted).

As to the second prong, "a suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." Best Van Lines, 490 F.3d at 246 (quotation marks, citation, and alteration omitted). As Judge Moses notes, "for specific jurisdiction to lie, a plaintiff must plead facts sufficient to show a 'substantial relationship' between each claim brought by that plaintiff and each defendant's transaction of business in New York." (R&R (Dkt. No. 91) at 22 (quoting Sunward Elecs., Inc., 362 F.3d at 24; Ainbinder v. Potter, 282 F. Supp. 2d 180, 184 (S.D.N.Y. 2003)))

21

Plaintiffs complain that Judge Moses's "R&R identifies, but discounts, Plaintiffs' assertions," which Plaintiffs contend constitute a sufficient prima facie showing for purposes of specific jurisdiction.  (See Pltf. Obj. (Dkt. No. 94) at 12)  In particular, Plaintiffs cite three purported transactions of business in New York that they argue provide a basis for the exercise of personal jurisdiction over the Non-Domiciliary Defendants:

(1)    "[T]he Trusts purposefully directed activities in . . . New York by suing individuals in local courts." (Pltf. Obj. (Dkt. No. 94) at 12 (quotation marks and citation omitted); see also Cmplt. (Dkt. No. 1) ¶ 16) ("Where individuals do not pay in response to Defendants' collection efforts, Defendants file debt collection lawsuits against them in [New York] state court."))

(2)    "[A]s to both the Trust Defendants and [Pennsylvania Higher Education], they transact business in New York by effecting debt collection activities there." (Pltf. Obj. (Dkt. No. 94) at 13; see also id. ("Defendants have conducted substantial and unlawful debt collection in New York, including in the manner alleged by Plaintiffs here, i.e., pre-litigation efforts . . . ." (emphasis omitted)) Plaintiffs further allege that "the Trusts do business in New York by contracting with [Pennsylvania Higher Education] to collect the Trusts' debts, some of which are in New York, as evidenced by the fact that collection is transferred to Transworld, a licensed New York debt collector, when [Pennsylvania Higher Education's] efforts are unsuccessful." (Pltf. Obj. (Dkt. No. 94) at 13 (quotation marks and citation omitted); see also Cmplt. (Dkt. No. 1) ¶¶ 25-30, 37 (alleging that each Trust, and Pennsylvania Higher Education, "does business in New York"))

(3)    "New York City was the location of the securitizations that caused National Collegiate's creation and inability to maintain documentation of ownership of loans involved in the securitizations." (Cmplt. (Dkt. No. 1) ¶ 160; see also Pltf. Obj. (Dkt. No. 94) at 13 ("[W]hether construed as a single transaction or a series of transactions, the securitization alone is sufficient to establish personal jurisdiction as to the Trust Defendants."))

As to Plaintiffs' claim that some of the Non-Domiciliary Defendants bring debt collection lawsuits in New York state courts,[9] "there are some cases where the act of litigating in

_____

[9] The Complaint does not specify which Defendants brought these lawsuits. Instead, the Complaint alleges in general terms that "Defendants file debt collection lawsuits against

22

New York is sufficient to confer jurisdiction over subsequent, related actions" under N.Y. C.P.L.R. § 302(a)(1). Austin Env't Corp. v. Margarita Express, LLC, No. 21 Civ. 4385 (PED), 2022 WL 1443356, at *7 (S.D.N.Y. May 6, 2022) (citing SEC v. Softpoint, No. 95 Civ. 2951, 2012 WL 1681167, at *3 (S.D.N.Y. May 9, 2012)).

But "[a] party's appearance as petitioner in one proceeding does not necessarily subject it to personal jurisdiction in another matter, even in the same court." Yehuda v. Zuchaer, 21-CV-7092 (VEC), 2022 WL 2209372, at *3 (S.D.N.Y. June 21, 2022), aff'd, No. 22-1972, 2023 WL 8888584 (2d Cir. Dec. 26, 2023) (quotation marks and citation omitted). To demonstrate that the exercise of personal jurisdiction in such circumstances is proper, a plaintiff must show that there is "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." See Best Van Lines, 490 F.3d at 246 (quotation marks and citation omitted).

The fact that some unspecified Defendants have allegedly sued non-parties in New York state court for non-payment of debts similar to those at issue in this case does not satisfy the second prong of C.P.L.R. § 302(a)(1). The Complaint does not allege that Plaintiffs were sued in New York state courts (see Cmplt. (Dkt. No. 1) ¶¶ 16 n.6, 18, 38), nor that any Defendant threatened to sue either Plaintiff in a New York state court. See Yehuda, 2022 WL 2209372, at *3-4 (holding that there was no "substantial relationship" between a prior lawsuit brought by defendant and the case at issue where "the current lawsuit involve[d] different claims" and "the two lawsuits do not even derive from the same transaction"); see also Vasquez

---

[debtors] in state court." (See, e.g., Cmplt. (Dkt. No. 1) ¶ 16)) As discussed above, such general pleading is not sufficient to justify the exercise of specific jurisdiction. See In re Aegean Marine Petroleum Network, Inc. Sec. Litig., 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) (citation omitted) (noting plaintiffs must "establish personal jurisdiction separately over each defendant" as generalized "group pleading is not permitted").

23

v. Hong Kong & Shanghai Banking Corp., Ltd., 477 F. Supp. 3d 241, 255-56 (S.D.N.Y 2020) (finding no personal jurisdiction where a defendant's New York transactions did not involve plaintiffs). Indeed, the putative class explicitly excludes all "[i]ndividuals who were sued in state-court collection suits wherein a Trust was the plaintiff." (Cmplt. (Dkt. No. 1) ¶ 16 n.6)

In sum, Plaintiffs' allegation that certain unspecified Defendants have brought debt collection lawsuits in New York state court – suits involving different parties, debts, and claims – is too attenuated from Plaintiffs' claims to demonstrate a "substantial relationship" with the instant claims. See Best Van Lines, 490 F.3d at 246; see also Yehuda, 2022 WL 2209372, at *3 ("[W]here the relationship between the prior litigation and the claim is attenuated, prior litigation is insufficient to confer personal jurisdiction.") Accordingly, this Court finds no error in Judge Moses's determination that "the present action clearly does not 'arise from' the Trusts' state-court collection lawsuits, as required to support the exercise of specific personal jurisdiction under CPLR § 302(a)(1)." (R&R (Dkt. No. 91) at 24)

Plaintiffs next argue that their claims arise out of Defendants' "substantial and unlawful debt collection in New York." (See Pltf. Obj. (Dkt. No. 94) at 13) According to Plaintiffs, the efforts by the Trust Defendants and Pennsylvania Higher Education to collect on student loan debt from non-parties in New York are sufficient to justify the exercise of specific jurisdiction under C.P.L.R. § 302(a)(1). In this regard, Plaintiffs point out that the Complaint alleges that the Trusts contract with Pennsylvania Higher Education to collect student loan debt, and "some of [those debts] are in New York." (Pltf. Obj. (Dkt. No. 94) at 13 (quotation marks and citation omitted); see also Cmplt. (Dkt. No. 1) ¶ 160 ("[A] significant number from whom [the Defendants] extract[] money are New York residents . . . ."))

The Complaint does not allege, however, that Plaintiffs hold any of the alleged "New York [student loan] debt" alluded to in the Complaint. To the contrary, the Complaint states that "neither plaintiff resides in New York or was subject to debt collection activities here." (Cmplt. (Dkt. No. 1) ¶¶ 23-24 (noting that Plaintiffs reside in Louisiana and South Dakota)); see also R&R (Dkt. No. 91) at 25. And Plaintiffs do not otherwise contend that the Trusts or Pennsylvania Higher Education undertook any debt collection efforts in New York.[10]

In any event, whether the Defendants have used the same practices at issue in this case to collect student loan debt from non-party New York residents is of no moment. "[I]f the Due Process Clause does not permit the exercise of jurisdiction, neither will C.P.L.R. § 302[.]" Bekstrone v. Berlin, 656 F. Supp. 3d 496, 507 n.5 (S.D.N.Y. 2023) (citation omitted). And the Supreme Court made clear that the Due Process Clause does not permit the exercise of specific jurisdiction based on a defendant's conduct as to non-parties. See Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty., 582 U.S. 255, 265 (2017) ("The mere fact that other plaintiffs . . . allegedly sustained the same injuries as did the nonresident[] [plaintiffs] does not allow the state to assert specific jurisdiction over the nonresidents' claims. . . . This remains true even when third parties . . . can bring claims similar to those brought by the nonresidents." (emphasis in original). In short, this Court cannot rely on Defendants' alleged efforts to collect

---

[10] For example, Plaintiffs do not argue that the letters Coradius sent to Plaintiff Seaman support the exercise of specific jurisdiction over the Trusts and Pennsylvania Higher Education, even though the Complaint alleges that Coradius "maintains offices at 2420 Sweet Home Rd. Ste. 150, Buffalo, New York 14228," and that "on or about March 7, 2022, Coradius mailed or caused to be mailed four (4) [collection] letters to Plaintiff Seaman. . . ." (See Cmplt. (Dkt. No. 1) ¶¶ 35, 93) In any event, the Complaint does not allege that Coradius mailed these letters from its Buffalo offices or that the Trusts or Pennsylvania Higher Education directed Coradius to mail these letters.

student loan debt from non-party New York residents to establish personal jurisdiction over the Non-Domiciliary Defendants.

Eades v. Kennedy, PC L. Offs., 799 F.3d 161 (2d Cir. 2015) – cited by Plaintiffs (see Pltf. Obj. (Dkt. No. 94) at 14-15) – is not to the contrary. In Eades, the Second Circuit found that certain defendants "activities in New York – mailing one debt collection notice to [a plaintiff], engaging in one debt collection phone call with [another plaintiff], and mailing a summons and complaint to both [p]laintiffs – [were] enough to establish personal jurisdiction under § 302(a)(1)." Id. at 168 (noting that defendant had "initiated its debt collection efforts in an active . . . attempt to collect money from two New York residents," and had made "business communications into New York"). Here, by contrast, Plaintiffs do not allege that the Trusts, Pennsylvania Higher Education, Eaton, or Rodenburg sent any such materials or made any such phone calls into New York. Nor do they allege that Defendants otherwise specifically directed any other party to transmit materials to New York residents or make phone calls to New York residents.

In sum, while Plaintiffs argue that Defendants' attempts to collect student loan debt in New York permit the exercise of specific jurisdiction under C.P.L.R. § 302(a)(1), the Complaint merely alleges that Defendants collected student loan debt from non-parties in New York. The Complaint does not assert that any part of Defendants' efforts to recover student loan debt from Plaintiffs occurred in New York. Accordingly, Plaintiffs' allegation that the Trusts contract with Pennsylvania Higher Education to collect from non-parties who may reside in New York does not "permit the exercise of jurisdiction" under C.P.L.R. § 302. See Bekstrone, 656 F. Supp. 3d at 507 n.5 (citation omitted).

Finally, Plaintiffs' argue that the alleged securitizations provide a basis for the exercise of specific jurisdiction under C.P.L.R. § 302(a)(1). But this argument was raised for the first time in Plaintiffs' objections to the R&R. Plaintiffs did not argue in their opposition brief that their claims arise out of the securitizations or that the securitizations provide a basis for the exercise of specific jurisdiction under C.P.L.R. § 302. (See Pltf. Opp. (Dkt. No. 75) at 62-64) "[A] district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate [judge] but were not." Gladden, 394 F. Supp. 3d at 480 (quotation marks and citation omitted)).[11]

This Court finds no error in Judge Moses's conclusion that the Non-Domiciliary Defendants are not subject to specific jurisdiction under N.Y. C.P.L.R. § 302(a)(1) "based on their own acts." (R&R (Dkt. No. 91) at 21-27)

### 3.    Specific Jurisdiction under C.P.L.R. § 302(a)(1) Based on an Agency Theory

Judge Moses concludes that Plaintiffs have "failed to plausibly allege that the Trusts or [Pennsylvania Higher Education] are subject to this Court's jurisdiction under an agency theory." (R&R (Dkt. No. 91 at 28) Because there has been no objection to this portion of the R&R, it will be reviewed for clear error. See Burke, 661 F. Supp. 3d at 281-82.

"To exercise personal jurisdiction over a defendant based on the acts of an agent, a showing must be made that the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." Spetner v.

---

[11] Moreover, Plaintiffs have not explained how the securitizations satisfy either requirement under C.P.L.R. § 302(a)(1). As Judge Moses notes, "plaintiffs do not explain what they mean when they say that New York City was 'the location of the securitizations,'. . . other than that the investors in the Trusts were 'on Wall Street.'" (R&R (Dkt. No. 91) at 42 (emphasis in original) (quoting Cmplt. (Dkt. No. 1) ¶ 10, 160)) And Plaintiffs have not explained in any fashion how the securitizations bear on their allegations that Defendants collection efforts were unlawful.

27

Palestine Inv. Bank, 70 F.4th 632, 640 (2d Cir. 2023) (quotation marks and citation omitted). And "[u]nder section 302, the non-resident principal must request not just the alleged agent's general presence in New York but also the activities giving rise to the suit." Edwardo v. Roman Cath. Bishop of Providence, 66 F.4th 69, 74-75 (2d Cir. 2023) (citing E. N.Y. Sav. Bank v. Republic Realty Mortg. Corp., 61 A.D. 2d 1001, 1002-03 (2d Dep't 1978)). "[S]parse allegations of agency . . . are too conclusory to make a prima facie showing of personal jurisdiction." Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 86 (2d Cir. 2018) (citation omitted).

"'It is not enough to allege that defendants had the legal ability to control the alleged agent; plaintiffs seeking to establish jurisdiction under [Section 302] must allege the actual exercise of control, based on "the realities of the relationship."'" Creative Photographers, Inc. v. Grupo Televisa, S.A.B., 763 F. Supp. 3d 618, 634-35 (S.D.N.Y. 2025) (quoting Hau Yin To v. HSBC Holdings, PLC, 700 F. App'x 66, 68 (2d Cir. 2017) (quoting CutCo Industries, Inc. v. Naughton, 806 F.2d 361, 366 (2d Cir. 1986))). "While the principal need not exercise absolute control over the decisions or acts of the putative agent, a sufficient amount of control may involve the ability of the principal to influence such acts or decisions by virtue of the parties' respective roles." Edwardo v. Roman Cath. Bishop of Providence, 579 F. Supp. 3d 456, 469 (S.D.N.Y. 2022), aff'd, 66 F.4th 69 (2d Cir. 2023) (quotation marks, citation, and alteration omitted); see also Branham v. ISI Alarms, Inc., No. 12-CV-1012 (ARR) (MDG), 2013 WL 4710588, at *7 (E.D.N.Y. Aug. 30, 2013) ("'[A] plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a 'primary' actor in the specific matter in question'" (quoting Karabu Corp. v. Gitner, 16 F. Supp.2d 319, 324 (S.D.N.Y. 1998)).

28

In their opposition brief, Plaintiffs contend that "[t]he Trusts and [Pennsylvania Higher Education] are . . . subject to jurisdiction under an agency theory, having contracted with [Transworld] (and so [Coradius]) to collect debts in New York." (Pltf. Opp. (Dkt. No. 75) at 64)

Judge Moses concludes, however, that Plaintiffs have not made a prima facie showing that Coradius qualifies as an agent of either the Trust Defendants or Pennsylvania Higher Education under C.P.L.R. § 302(a)(1). (R&R (Dkt. No. 91 at 28) As the R&R notes, the Complaint does not allege "that either the Trusts or [Pennsylvania Higher Education] contracted with [Coradius] (the sole domiciliary defendant)." (Id.) The Complaint likewise does not allege that the Trusts or Pennsylvania Higher Education "'played an active role in directing [Coradius's] activities relating to [any] specific in-forum transactions at issue[.]'" (Id. (quoting Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp., 667 F. Supp. 3d 83, 144 (S.D.N.Y. 2023)) Accordingly, Plaintiffs have not pled facts sufficient to establish agency jurisdiction over the Trust Defendants or Pennsylvania Higher Education by virtue of Coradius's conduct.

As to Transworld, agency jurisdiction under C.P.L.R. § 302(a)(1) requires a showing that Plaintiffs' claims arise out of "the alleged agent [having] acted in New York . . . under some control by[] the nonresident principal." Spetner, 70 F.4th at 640 (quotation marks and citation omitted). But Plaintiffs have not alleged facts showing that the Trust Defendants and Pennsylvania Higher Education exercised any such control over Transworld. The Complaint merely asserts that the Trust Defendants "contract[] with [Pennsylvania Higher Education] and Transworld to collect debts on [their] behalf." (Cmplt. (Dkt. No. 1) ¶ 3; see also Pltf. Opp. (Dkt. No. 75) at 64 (arguing that the Trusts and Pennsylvania Higher Education subjected themselves to agency jurisdiction by "contract[ing] with [Transworld] (and so [Coradius]) to collect debts in

29

New York." (citation omitted)))  The Complaint provides no information as to the terms of these agreements, however, and thus does not demonstrate that the Trusts and Pennsylvania Higher Education "actual[ly] exercise . . . control [over]" Transworld's activities.  See Creative Photographers, 763 F. Supp. 3d at 634-35 (quotation marks and citation omitted).

In sum, Plaintiffs have not alleged facts showing that the Trust Defendants and Pennsylvania Higher Education exercise control over collections by Transworld in New York. Accordingly, there is no clear error in Judge Moses's finding that Plaintiffs have "failed to plausibly allege that the Trusts [and Pennsylvania Higher Education] are subject to this Court's jurisdiction under an agency theory."  (R&R (Dkt. No. 91) at 28)

### 4.    Specific Jurisdiction under C.P.L.R. § 302(a)(1) Based on a Conspiracy Theory

Judge Moses further concludes that the Complaint does not plead facts sufficient to justify the exercise of specific jurisdiction under a conspiracy theory.  (R&R (Dkt. No. 91 at 28)  Because there is no objection to this finding, it will be reviewed for clear error.  See Burke, 661 F. Supp. 3d at 281-82.

According to Plaintiffs, a non-domiciliary defendant may subject itself to personal jurisdiction in New York under New York's long-arm statute "'through certain actions taken by a co-conspirator in the forum.'"[12]  (Pltf. Opp. (Dkt. No. 75) at 64 (first quoting Schwab Short-

---

[12] The Second Circuit has not decided whether New York's long-arm statute permits the exercise of specific jurisdiction under a conspiracy theory.  See Force v. Qatar Charity, No. 20-CV-2578 (BMC), 2025 WL 43163, at *4 (E.D.N.Y. Jan. 7, 2025), appeal withdrawn, No. 25-276, 2025 WL 1341150 (2d Cir. Mar. 20, 2025)  Several district courts have concluded, however, that a conspiracy theory of jurisdiction is not available under N.Y. C.P.L.R. § 302(a)(1) or § 302(a)(2)(d)).  See Berdeaux v. OneCoin Ltd., 561 F. Supp. 3d 379, 400-01 (S.D.N.Y. 2021) ("Nor could the Court exercise jurisdiction over [the defendant] under Section 302(a)(1) on a conspiracy theory based on the conduct of an alleged co-conspirator." (citation omitted)); In re Dental Supplies Antitrust Litig., No. 16-cv-696, 2017 WL 4217115, at *7 (E.D.N.Y. Sept. 20, 2017) (declining to "adopt the application of conspiracy jurisdiction" under C.P.L.R. § 302(a) because "there is no doctrinal support for 'conspiracy jurisdiction.'"); E-Z Bowz, L.L.C. v. Pro.

Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC, 22 F.4th 103, 122 (2d Cir. 2021); then

citing Shpak v. Curtis, No. 10-CV-1818 (RRM)(JO), 2011 WL 4460605, at *24-25 (E.D.N.Y.

Sept. 26, 2011))) Under this conspiracy theory, a court may exercise personal jurisdiction over a

non-domiciliary defendant where a plaintiff plausibly alleges that (1) the defendant participated

in a conspiracy; and (2) "a co-conspirator's overt acts in furtherance of the conspiracy had

sufficient contacts with [the forum] to subject that co-conspirator to jurisdiction in that [forum]."

Bayshore Cap. Advisors., 667 F. Supp. 3d at 145 (alterations in original) (quoting Lloyds

Banking Grp. PLC, 22 F.4th at 122)). Here, Plaintiffs contend that "the Trusts, [Pennsylvania

Higher Education], Eaton, and Rodenburg have all subjected themselves to jurisdiction in New

York through . . . [Transworld] and [Coradius]'s collections in New York." (Pltf. Opp. (Dkt. No.

75) at 64 (quotation marks and citations omitted))

Judge Moses concludes that Plaintiffs have not adequately pled overt acts by an

alleged co-conspirator in New York that could subject the Non-Domiciliary Defendants to

jurisdiction in New York pursuant to a conspiracy theory. (R&R (Dkt. No. 91) at 29) In this

regard, Judge Moses notes that Plaintiffs have not "identif[ied] any actual collections by

Transworld 'in New York'" or "anything [else] that Transworld did in New York that resulted in

harm to them." (Id.) This Court finds no clear error in this analysis. See Bayshore Cap.

Advisors., 667 F. Supp. 3d at 145; see also Bristol-Myers Squibb Co., 582 U.S. at 265

---

Prod. Rsch. Co., No. 00-CV-8670 (LTS) (GWG), 2003 WL 22064259, at *9 (S.D.N.Y. Sept. 5, 2003) ("The 'conspiracy theory' of jurisdiction on which they apparently rely has been held to be 'inapplicable' under section 302(a)(1)." (quoting Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc., 10 F. Supp. 2d 334, 342 (S.D.N.Y. 1998)).

As discussed below, even if a conspiracy theory of specific jurisdiction were viable, Plaintiffs have not pled sufficient supporting facts.

(explaining that a non-resident plaintiff cannot rely on a defendant's conduct towards resident third parties to establish a defendant's minimum contacts with a forum).

Judge Moses does not address Plaintiffs' argument that Coradius engaged in conduct that subjects the Non-Domiciliary Defendants to personal jurisdiction under a conspiracy theory. (See Pltf. Opp. (Dkt. No. 75) at 64 (arguing that both Transworld and Coradius have engaged in debt collection activities in New York that would permit the exercise of personal jurisdiction over the remaining Defendants)) Although this was error, this oversight is of no moment, because the Complaint does not allege facts showing that Coradius actually engaged in debt collection activities in New York. Plaintiffs merely assert that Coradius has offices in Buffalo, New York, and "does business throughout the country, including in New York." (See Cmplt. (Dkt. No. 1) ¶ 35) This conclusory allegation is insufficient.

Accordingly, as with Transworld, this Court finds that Plaintiffs have not made a prima facie showing that Coradius committed "overt acts in furtherance of the [alleged] conspiracy [that] had sufficient contacts with [New York]" so as to permit this Court to exercise personal jurisdiction over the Non-Domiciliary Defendants. See Bayshore Cap. Advisors., 667 F. Supp. 3d at 145.

### 5.    Specific Jurisdiction under RICO

Plaintiffs also contend that this Court may exercise specific jurisdiction over the Non-Domiciliary Defendants pursuant to the RICO statute. (Pltf. Opp. (Dkt. No. 75) at 64-65) Judge Moses rejects this argument. (R&R (Dkt. No. 91) at 29-41) Plaintiffs have not objected to this finding. Accordingly, it will be reviewed only for clear error. See Burke, 661 F. Supp. 3d at 281-82.

As discussed above, "[a] federal statute" – such as the RICO statute – "can provide the statutory basis for personal jurisdiction." Broumand, 522 F. Supp. 3d at 15 (quotation marks and citation omitted). The RICO statute includes such a jurisdictional provision:

> In any [RICO action] in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

18 U.S.C. § 1965(b).

Section 1965(b) "'does not[,] [however,] provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found.'" Fire & Police Pension Ass'n of Colorado v. Bank of Montreal, 368 F. Supp. 3d 681, 694 (S.D.N.Y. 2019) (quoting PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc., 138 F.3d 65, 71 (2d Cir. 1998)). Instead, "'a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant.'" Id. If personal jurisdiction is established as to one defendant, Section 1965(b) "authorizes the court's assertion of nationwide personal jurisdiction over other parties, including co-defendants and third-party defendants, where the 'ends of justice' so require." Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc., 331 F. Supp. 3d 130, 145 (S.D.N.Y. 2018) (citation omitted).

"Only 'if the allegations in the complaint state a viable RICO claim . . . would it be proper to exercise ends of justice RICO jurisdiction.'" Fire & Police Pension Ass'n of Colorado, 368 F. Supp. 3d at 694 (citations and alterations omitted). Where a plaintiff does not state a plausible RICO claim, 18 U.S.C. § 1965(b) does not authorize a court to exercise jurisdiction over non-domiciliary defendants. See Hitachi, 331 F. Supp. 3d at 145-48

33

(considering the adequacy of plaintiff's RICO claim for purposes of a Rule 12(b)(2) motion and concluding that 18 U.S.C. § 1965(b) did not authorize personal jurisdiction over defendants "[b]ecause [plaintiff] has failed to state a valid civil RICO claim"); BWP Media v. Hollywood Fan Sites, LLC, 69 F. Supp. 3d at 342 (S.D.N.Y. Nov. 14, 2014) (finding that plaintiffs could not "rely upon 18 U.S.C. § 1965(b) to establish personal jurisdiction over each of the defendants'" because they had "fail[ed] to state a claim under RICO" (quoting Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC, No. 11 Civ. 7801 (PAE), 2012 WL 1231775, at *8 (S.D.N.Y. Apr. 12, 2012))).

Where a complaint adequately states a RICO claim, however, a court may exercise "ends of justice" jurisdiction under Section 1965(b) over a non-domiciliary. Elsevier Inc. v. W.H.P.R., Inc., 692 F. Supp. 2d 297, 315 (S.D.N.Y. 2010). And where Section 1965(b) authorizes the exercise of personal jurisdiction over a defendant, a court may also exercise personal jurisdiction over that defendant "'for other claims that arise out of the same operative facts as the civil RICO claim, even if personal jurisdiction would not otherwise be present as to those claims.'" J.T. v. de Blasio, 500 F. Supp. 3d 137, 163 (S.D.N.Y. 2020) (quoting Hitachi Data Sys. Credit Corp., 331 F. Supp. 3d at 145 (citing IUE AFL-CIO Pension Fund v. Herrman, 9 F.3d 1049, 1056-57 (2d Cir. 1993))).

To adequately plead a civil RICO claim, a plaintiff must allege "(1) the defendant's violation of 18 U.S.C. § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant' s violation." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 283 (2d Cir. 2006) (quotation marks and alteration omitted); see also 18 U.S.C. § 1964(c) (providing a cause of action for "[a]ny person injured in his business or property by

34

reason of a violation" of Section 1962). 18 U.S.C. § 1962(d) prohibits any person from conspiring to violate any of the substantive provisions set forth in 18 U.S.C. § 1962(a)-(c).

A substantive violation of the RICO statute occurs when "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, . . . conduct[s] or participate[s], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Accordingly, to establish a substantive RICO violation, a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce," in addition to injury and causation. Williams v. Affinion Grp., LLC, 889 F.3d 116, 123-24 (2d Cir. 2018) (quoting Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983)).

Here, Judge Moses concludes that Section 1965(b) does not authorize this Court to exercise jurisdiction over the Non-Domiciliary Defendants because Plaintiffs have not "pleaded a viable RICO claim," having not "adequately alleged [either] a pattern of racketeering activity or a resulting injury to their business or property." (R&R (Dkt. No. 91) at 32-41)

No party having objected to Judge Moses's analysis as to Section 1965(b), this Court has reviewed this portion of the R&R only for clear error. Finding no clear error, this Court adopts the R&R's analysis as to Section 1965(b) in its entirety.

*       *       *       *

Having reviewed Judge Moses's personal jurisdiction analysis, this Court finds it to be thorough, well-reasoned, and free of any clear error to the extent that it concludes that Plaintiffs have not made a prima facie showing of personal jurisdiction over the Trust

35

Defendants, Pennsylvania Higher Education Assistance Agency, Eaton, and Rodenburg. This Court further concludes that Plaintiffs have not made a prima facie showing that Coradius's conduct in New York authorizes this Court to exercise "conspiracy jurisdiction" over the Non-Domiciliary Defendants under New York law. Accordingly, this Court adopts Judge Moses's recommendation that Defendants' motion to dismiss be granted as to the Trust Defendants, the Pennsylvania Higher Education Assistance Agency, Eaton, and Rodenburg for lack of personal jurisdiction.

## III.   VENUE

In her R&R, Judge Moses recommends that the Complaint be dismissed in its entirety for improper venue. (R&R (Dkt. No. 91) at 41-48)

### A.   Legal Standards

District courts "apply the same standard of review in Rule 12(b)(3) dismissals for improper venue as [they] do in Rule 12(b)(2) dismissals for lack of personal jurisdiction." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005). Accordingly, "[u]pon a motion to dismiss under Rule 12(b)(3), the plaintiff has the burden of pleading venue." U.S. Commodity Futures Trading Comm'n v. Wilson, 27 F. Supp. 3d 517, 536 (S.D.N.Y. 2014) (citing Pers v. Google Inc., 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006)). While it is plaintiff's burden to demonstrate that venue is proper, "[a]bsent a formal hearing on the motion, a plaintiff need only make a prima facie showing of venue." Cartier v. Micha, Inc., No. 06 Civ. 4699(DC), 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007) (citing Glasbrenner, 417 F.3d at 355).

Under 28 U.S.C. § 1391(b), "[a] civil action may be brought" in

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

36

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  Only subsections (2) and (3) are relevant here.

"[S]ection 1391(b)(2) does not restrict venue to the district in which the 'most substantial' events or omissions giving rise to a claim occurred." Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005) (citation omitted).  Section 1391(b)(2) instead "'contemplates that venue can be appropriate in more than one district' and 'permits venue in multiple judicial districts as long as a "substantial part" of the underlying events took place in those districts.'"  Id. (quoting Glasbrenner, 417 F.3d at 356) (further citations omitted).

The Second Circuit has "caution[ed] district courts to take seriously the adjective 'substantial'" and to "construe the venue statute strictly." Glasbrenner, 417 F.3d at 357 (quoting Olberding v. Ill. Cent. R.R., 346 U.S. 338, 340 (1953)).  "Substantiality for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." Kaul v. Intercontinental Exch., No. 21-CV-6992 (JPO), 2022 WL 4133427, at *6 (S.D.N.Y. Sept. 12, 2022) (citations omitted) (quoting Daniel, 428 F.3d at 432-33).  "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." Daniel, 428 F.3d at 433.  District courts should also focus on "the relevant activities of the defendant, not the plaintiff," because "'the purpose of statutorily defined venue is to protect the defendant against the risk that

a plaintiff will select an unfair or inconvenient place of trial.'" <u>Micromem Techs., Inc. v. Dreifus Assocs. Ltd.</u>, No. 14-cv-9145 (LAK), 2015 WL 8375190, at *4 (S.D.N.Y. Dec. 8, 2015) (emphasis in original) (quoting <u>Daniel</u>, 428 F.3d at 432).

Where a plaintiff relies on Section 1391(b)(2), "a two-part inquiry is appropriate." <u>Diaz-Roa v. Hermes Law, P.C.</u>, 757 F. Supp. 3d 498, 547 (S.D.N.Y. 2024) (quoting <u>Daniel</u>, 428 F.3d at 432).

> First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims. Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether "significant events or omissions material to [those] claim[s] . . . have occurred in the district in question."

<u>Daniel</u>, 428 F.3d at 432 (alterations in original) (quoting <u>Glasbrenner</u>, 417 F.3d at 357).

As to Section 1391(b)(3), a plaintiff can rely on this provision "'only if venue cannot be established in another district pursuant to any other venue provision.'" <u>Rankel v. Kabateck</u>, No. 12 CV 216(VB), 2013 WL 7161687, at *7 (S.D.N.Y. Dec. 9, 2013) (quoting <u>Daniel</u>, 428 F.3d at 434). In other words, Section 1391(b)(3) "'provides a fallback option . . . [i]f no other venue is proper.'" <u>Chen v. Wang</u>, 793 F. Supp. 3d 447, 453 (E.D.N.Y. 2025) (alterations in original) (quoting <u>Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas</u>, 571 U.S. 49, 56-57 (2013)).

In ruling on a motion to dismiss based on improper venue, "[t]he district court must accept facts alleged in the complaint as true and draw reasonable inferences in the plaintiff's favor." <u>Micromem Techs.</u>, 2015 WL 8375190, at *4 (citing <u>Wilson</u>, 27 F. Supp. 3d at 536). The court "may rely on the pleadings and affidavits submitted in connection with the motion, but cannot resolve any disputed material fact in the movant's favor unless an evidentiary hearing is held." <u>Allianz Glob. Corp. & Specialty v. Chiswick Bridge</u>, Nos. 13-cv-7559-RA, 13-

38

cv-7565-RA, 2014 WL 6469027, at *2 (S.D.N.Y. Nov. 17, 2014) (citing Martinez v. Bloomberg LP, 740 F.3d 211, 216-17 (2d Cir. 2014)).

"[G]eneral and conclusory allegations cannot support a finding of venue under 28 U.S.C. § 1391(b)." P.C. v. Driscoll, 24-cv-2496 (LJL), 2025 WL 104522, at *6 (S.D.N.Y. Jan. 15, 2025) (quotation marks and citations omitted); see also Struna v. Leonardi, 626 F. Supp. 3d 657, 665 (S.D.N.Y. 2022) (a court ruling on a Rule 12(b)(2) motion to dismiss may not "draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation" (quotation marks and citation omitted)).

### B.    Analysis

Judge Moses concludes that venue is improper in the Southern District of New York under 28 U.S.C. § 1391(b)(2) because "none of the 'acts or omissions' that give rise to plaintiffs' claims occurred in [this District]." (R&R (Dkt. No. 91) at 41-47)  She further finds that venue is improper in this District under 28 U.S.C. § 1391(b)(3) because "[t]here are multiple judicial districts in which venue for plaintiffs' claims could lie." (Id. at 46-47 (citations omitted))

Plaintiffs raise three objections to Judge Moses's venue analysis. First, they argue that Judge Moses erred in failing to address "Plaintiffs' argument that 'the owners' purchase agreement selects this Court – the U.S. District Court for Southern District of New York – as the proper venue to settle disputes concerning the Trusts.'"[13] (Pltf. Obj. (Dkt. No. 94) at 17 (quoting Pltf. Opp. (Dkt. No. 75) at 19))  Second, Plaintiffs contend that the R&R's Section 1391(b)(2) analysis is flawed in that it "fails to adequately credit the well-pled allegations relating to New

---

[13] As discussed below, the purchase agreement Plaintiffs reference is the agreement by which the current owners of the Trusts obtained their interest in the Trusts. (See Pltf. Obj. (Dkt. No. 94) at 17 n.13)

York." (Id. at 17-19). Finally, Plaintiffs complain that the R&R errs in failing to acknowledge that venue is proper under 28 U.S.C. § 1391(b)(3) because "there is no other district in which an action may be brought on Plaintiffs' claims." (Id. at 19-21)

### 1.    Forum selection clause

As noted above, Plaintiffs contend that venue is proper in this District because the purchase agreement by which the current owners of the Trusts obtained their interests in the Trusts provides that this District is "the proper venue to settle disputes concerning the Trusts.'" (Pltf. Obj. (Dkt. No. 94) at 17 (quoting Pltf. Opp (Dkt. No. 75) at 19)) Judge Moses does not address this argument in her R&R. Accordingly, this Court considers the issue de novo.

Under federal law, a valid forum selection clause "represents the parties' agreement as to the most proper forum," and "should be given controlling weight in all but the most exceptional cases." Atl. Marine Const. Co., 571 U.S. at 63 (internal citations and alterations omitted); see also Koninklijke Philips Elecs. v. Digital Works, Inc., 358 F. Supp. 2d 328, 333 (S.D.N.Y. 2005) ("A valid forum selection clause establishes sufficient contacts with New York for purposes of jurisdiction and venue." (citations omitted)). Such clauses "have the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions." Magi XXI, Inc. v. Stato della Città del Vaticano, 714 F.3d 714, 722 (2d Cir. 2013) (quotation marks and citations omitted).

Courts conduct a four-part analysis in determining whether a forum selection clause is enforceable. See, e.g., Reed v. Luxury Vacation Home LLC, 632 F. Supp. 3d 489, 505-08 (S.D.N.Y. 2022). Courts consider

(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., whether the parties are required to bring any . . . dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. . . . If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. . . . A party can overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

Starkey v. G Adventures, Inc., 796 F.3d 193, 196-97 (2d Cir. 2015) (alterations in original) (quoting Martinez, 740 F. 3d at 217)). As to the third requirement, "'the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude [that party's] enforcement of [the] forum selection clause." Fasano v. Li, 47 F.4th 91, 103 (2d Cir. 2022) (alteration omitted) (quoting Aguas Lenders Recovery Grp. v. Suez, S.A., 585 F.3d 696, 701 (2d Cir. 2009)).

"[A] non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory." Magi XXI, Inc., 714 F.3d at 723 (citation omitted). "'[C]ourts [in this Circuit] have found parties to be so "closely related" that enforcement of a forum selection clause is "foreseeable" . . . where the non-signatory had an active role in the transaction between the signatories or where the non-signatory had an active role in the company that was the signatory.'" Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc., 575 F. Supp. 3d 445, 460 (S.D.N.Y. 2021) (quoting Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc., 328 F. Supp 3d 329, 336 (S.D.N.Y. 2021)). "'[A]lter egos, corporate executive officers, and successors-in-interest, at least in some instances, [may] satisfy the "closely related" test.'" Id. (alteration omitted) (quoting Vuzix Corp. v. Pearson, No. 19 Civ. 689 (NRB), 2019 WL 5865342, at *5 (S.D.N.Y. Nov. 6, 2019)).

41

Here, Plaintiffs seek to enforce a forum selection clause found in the "Inducement Agreement" – the agreement by which the current owners of the Trust Defendants acquired their interests in the Trusts.[14] (See Pltf. Obj. (Dkt. No. 94) at 17 n.13 (citing Inducement Agreement (Nov. 14, 2011), available at https://www.sec.gov/Archives/edgar/data/1262279/000119312511309613/d255943dex992.htm))

Plaintiffs cannot enforce the Inducement Agreement against any of the Defendants, however, because no party in this case is a signatory to that agreement. See Inducement Agreement (listing The First Marblehead Corp., First Marblehead Educ. Recs., Inc., VCG Owners Trust, and VCG Securities LLC as parties to the agreement). And Plaintiffs – two individuals who took out student loans – are not "closely related" to the two Delaware corporations, the Delaware statutory trust, and the Florida limited liability company that are signatories to the agreement. See Magi XXI, Inc., 714 F.3d at 723. In sum, Plaintiffs cannot enforce the Inducement Agreement's forum selection clause against signatories of that agreement, much less enforce the forum selection clause against the non-signatories named as Defendants in this case.

Because the Inducement Agreement's forum selection clause has no application here, it is of no assistance to Plaintiffs in demonstrating that venue is proper in this District.

2.    **28 U.S.C. § 1391(b)(2)**

In connection with Judge Moses's Section 1391(b)(2) analysis, Plaintiffs complain that she "fails to adequately credit the well-pled allegations . . . [that] together

---

[14] The Court takes judicial notice of this agreement as contained in an SEC filing. It does so "to determine what statements [the agreement] contain[s]," but "not for the truth of [any] matters asserted [in the agreement]." See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis omitted).

demonstrate that a substantial part of the events giving rise to Plaintiffs' claims occurred in New York." (Pltf. Obj. (Dkt. No. 94) at 18)  Because Plaintiffs object to a "specific legal conclusion in the report and recommendation," the Court reviews this portion of the R&R de novo.  See Nambiar, 158 F.4th at 361 (quotation marks and citation omitted).

In support of their objection, Plaintiffs cite the following allegations in the Complaint:

(1)    "New York City was the location of the securitizations that caused National Collegiate's creation and inability to maintain documentation of ownership of loans involved in the securitizations." (Cmplt. (Dkt. No. 1) ¶ 160; see also id. ¶ 10 ("Defendants lacked documentation proving ownership because the loans were subject to a complex securitization process in the mid-2000s.  At the time, investors on Wall Street were sold stakes in 'pools' combining thousands of loans from private lenders."))

(2)    Donald Uderitz, "the founder of Vantage Capital Group, a private equity firm that is the beneficial owner of National Collegiate[,] . . . granted an interview to the New York Times for a July 17, 2017 article about National Collegiate's systematic inability to produce proof of indebtedness and entitlement to sue." (Id. ¶¶ 127-28 (emphasis in original))  In that interview, Mr. Uderitz stated that "of a random sample of roughly 400 National Collegiate loans, not one had paperwork evidencing the chain of ownership." (Id. ¶¶ 129-30)

(3)    "Defendants conduct business in the State of New York, and Defendants' fraud upon plaintiffs was coordinated in this District." (Id. ¶ 19)

(4)    The Trust Defendants, Pennsylvania Higher Education, Transworld, EGS, and Coradius "do[] business in New York." (Id. ¶¶ 25-32, 35, 37)

(5)    Coradius is a New York corporation "that maintains offices at 2420 Sweet Home Rd. Ste. 150, Buffalo, New York 14228." (Id. ¶ 35)

(6)    "[A] significant number of the consumers from whom [Defendants] extract[] money are New York residents." (Id. ¶ 160)

(See Pltf. Obj. (Dkt. No. 94) at 17-19)

43

As to Plaintiffs' argument that "New York City was the location of the securitizations," the R&R reminds the reader of the nature of the fraud scheme that the Complaint alleges:

> Transworld, which allegedly "coordinated" the scheme to collect unprovable and/or time-barred debt, did so by sending instructions from Georgia to Network Firms located in Fargo, North Dakota (which is in the District of North Dakota); Buffalo, New York (which is in the Western District of New York), and Baton Rouge, Louisiana (which is in the Middle District of Louisiana). The Network Firms then sent "deceptive collection letters demanding payment" (presumably from their offices in Fargo, Buffalo, and Baton Rouge) to plaintiffs in South Dakota and Louisiana, where they incurred various injuries, including taking substantial time out of their personal and professional lives to investigate and challenge defendants' collection attempts; experiencing mental and emotional anguish; and (in Seaman's case) learning that her credit score was lower due to ACI's negative credit-reporting.

(R&R (Dkt. No. 91) at 43-44 (internal citations and footnotes omitted))

Given the nature of the fraud scheme described in the Complaint, the alleged securitizations of student loans in New York City do not amount to "'significant events or omissions material to [Plaintiff's] claim[s].'" See Daniel, 428 F.3d at 432 (**second** alteration in original) (quoting Glasbrenner, 417 F.3d at 357). In this regard, Judge Moses notes that Plaintiffs do not complain that the securitization of the underlying loans was "somehow illegal or injurious." (R&R (Dkt. No. 91) at 44 (quotation marks and citation omitted)) Indeed, Plaintiffs' "claims do not involve the securitization process but instead allegedly improper collection activity" that took place more than a decade after the securitizations. (Id.); see also Holloway v. Holy See, 537 F. Sup. 3d 502, 506 (S.D.N.Y. 2021) (finding that a defendant's activities in New York that took place decades after the alleged unlawful conduct lacked a close nexus to plaintiff's claim). Judge Moses goes on to find that the securitization of the underlying loans in the 2000s lacks any "nexus, much less the required 'close nexus,'" to Plaintiff's claims arising out of collection efforts in other parts of the United States during the period between 2022 and

44

2023. (Id. at 44-45 (first quoting Daniel, 428 F.3d at 433; then citing Glassbrenner, 417 F. 3d at 357)) This Court finds no error in Judge Moses's analysis.

As to the remaining allegations cited by Plaintiffs in their objections, the July 17, 2017 New York Times article did not "give rise" to Plaintiffs' alleged injuries. See 28 U.S.C. § 1391(b)(2). Indeed, the Complaint's allegations concerning the New York Times interview are set forth in a section of the Complaint entitled "Defendants' Conspiracy Unravels." (Cmplt. (Dkt. No. 1) ¶¶ 127-30) In short, the New York Times interview has no bearing on the Section 1391(b)(2) inquiry.

And Plaintiffs' assertion that "Defendants' fraud upon plaintiffs was coordinated in this District" (Cmplt. (Dkt. No. 1) ¶ 19) is a "general and conclusory allegation[] [that] cannot support a finding of venue under 28 U.S.C. § 1391(b)." See P.C., 2025 WL 104522, at *6 (citations omitted). As Judge Moses notes, "Plaintiffs do not provide any facts to support [this] sweeping statement." (R&R (Dkt. No. 91) at 41) They instead "allege that Transworld 'coordinated' the scheme by sending instructions from its 'personnel and systems located in Georgia to Network Firm Rodenburg located in North Dakota and to [Coradius] located in Buffalo, New York and to Eaton Group located in Louisiana, to commence efforts concerning the Trust Defendants.'" (Id. at 41-42 (alterations and emphasis omitted) (quoting Cmplt. (Dkt. No. 1) ¶ 187(a))) Accordingly, Plaintiffs' assertion that the alleged fraud conspiracy was coordinated in this District "is 'purely speculative' and thus cannot be the basis for establishing proper venue." See Filsoof v. Wheelock St. Cap., LLC, 22 Civ. 9359 (NRB), 2023 WL 8280496, at *4 n.5 (S.D.N.Y. Nov. 30, 2023) (quoting Palladian Partners, L.P. v. Province of Buenos Aires, No. 21 Civ. 5958 (CM), 2022 WL 16700188, at *4 (S.D.N.Y. Nov. 3, 2022)).

45

Plaintiffs' remaining allegations provide no basis for venue in this District, because they do not specify the judicial district in which the alleged conduct occurred. "The question of venue concerns the proper judicial district" and not the state "in which to bring a claim." Doe 1 v. Congregation of Sacred Hearts of Jesus & Mary, 21cv6865(DLC), 2023 WL 185496, at *3 n.3 (S.D.N.Y. Jan. 13, 2023); see also Glasbrenner, 417 F.3d at 357 (finding improper venue because "New York State encompasses four judicial districts, but the complaint does not specify in which one" the relevant conduct occurred); Rankel, 2013 WL 7161687, at *6 ("Because the venue inquiry is district-specific, litigation in the Eastern District of New York does not support venue in the Southern District of New York." (citations omitted)).

Here, Plaintiffs allege that (1) certain defendants "do[] business in New York" (Cmplt. (Dkt. No. 1) ¶¶ 25-32, 35, 37); (2) Coradius "is a New York corporation" with offices in Buffalo (id. ¶ 35); and (3) many consumers from whom Defendants attempt to recover student loan debt "are New York residents." (Id. ¶ 160) None of these allegations reference the Southern District of New York or any specific location within this District. (See R&R (Dkt. No. 91) at 43-44 & n.23 (noting that Coradius's "acts or omissions in the Western District of New York do not support venue in the Southern District of New York") (citing Rankel, 2013 WL 7161687, at *6)) In sum, Plaintiffs allegations that "relevant events occurred somewhere in the State of New York are inadequate to show why venue is proper in this district." See Doe 1, 2023 WL 185496, at *3 n.3.

This Court finds no error in Judge Moses's Section 1391(b)(2) analysis, and Plaintiffs' objections to this section of the R&R are overruled.

46

### 3.    28 U.S.C. § 1391(b)(3)

Plaintiffs contend that Judge Moses also erred in finding venue improper under 28 U.S.C. § 1391(b)(3). (Pltf. Obj. (Dkt. No. 94) at 19-20)  According to Plaintiffs, Judge Moses should have acknowledged that "if venue is not proper in New York, it cannot be proper anywhere." (Id. at 19)  Because Plaintiffs attack a "specific legal conclusion in the report and recommendation," this portion of the R&R is reviewed de novo.  See Nambiar, 158 F.4th at 361 (quotation marks and citation omitted).

"Venue can be based on [Section 1391(b)(3)] 'only if venue cannot be established in another district pursuant to any other venue provision,'" Rankel, 2013 WL 7161687, at *7 (quoting Daniel, 428 F.3d at 434), and Plaintiff bears the burden of demonstrating that Section 1391(b)(3) is applicable.  See Vanleeuwen v. Keyuan Petrochemicals, Inc., No. CV 11-9495 PSG JCGX, 2013 WL 2247394, at *22 (C.D. Cal. May 9, 2013) ("[V]enue is not proper pursuant to § 1391(b)(3) because Plaintiffs have [not] established that there is no other judicial district in which the action may be brought. . . ." (citing Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 1996)); 14D Charles Alan Wright et al., Federal Practice and Procedure § 3806.1 (4th ed. 2015) ("[M]ost courts . . . place on the plaintiff the burden of showing that Section 1391(b)(3) applies.  That is, the plaintiff must show that no district satisfied either Section 1391(b)(1) or Section 1391(b)(2) before undertaking to show that venue is proper under Section 1391(b)(3)."); see also Pfister v. Selling Source, LLC, 931 F. Supp. 2d 1109, 1119-20 (D. Nev. 2013) ("Plaintiff advances only one argument as to why venue is proper in this court[,] namely, that section 1391(b)(3) provides a basis for venue"; because "plaintiff makes no showing that venue cannot be proper in another district," Section 1391(b)(3) is not applicable.); Pisani v. Diener, No. 07-CV-5118 JFB/ARL, 2009 WL 749893, at *7 (E.D.N.Y. Mar. 17, 2009) ("Section

47

1391(b)(3) is not met because plaintiff cannot show that there is no district in which this lawsuit could otherwise be brought under the law. Based upon the allegations in the amended complaint (including the allegations that all defendants reside in the Southern District of Florida), venue would clearly be proper in the United States District Court for the Southern District of Florida.").

In arguing that venue in this District is proper under Section 1391(b)(3), Plaintiffs contend that New York is "the place in which the necessary, but-for events took place that enabled this scheme to be executed." (Pltf. Obj. (Dkt. No. 94) at 19) Accordingly, "[i]f New York" does not constitute a proper venue in light of these "'substantial' and 'material' event[s] . . . , then nowhere does."[15] (Id.; see also Pltf. Opp. (Dkt. No. 75) at 66 (contending without explanation that there is "likely 'no district in which an action may otherwise be brought'" if venue is not proper in the Southern District of New York))

Plaintiffs' arguments are not persuasive. As discussed above, the Complaint does not plead facts showing that "a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred" in this District under 28 U.S.C. § 1391(b)(2). Moreover, whether such events took place in this District is not the proper inquiry under 28 U.S.C. § 1391(b)(3). Under Section 1391(b)(3), Plaintiffs are instead required to demonstrate that venue is not proper in any other district. See Chen, 793 F. Supp. 3d at 453 (holding that Section 1391(b)(3) applies only "'[i]f no other venue is proper.'" (alteration in original) (quoting Atlantic Marine Const. Co., 571 U.S. at 56-57)).

---

[15] Although Plaintiffs again refer to New York State rather than the Southern District of New York, for purposes of resolving the motion to dismiss, this Court will assume that Plaintiffs intended to refer to the Southern District of New York. See Rankel, 2013 WL 7161687, at *6 (noting "the venue inquiry is district-specific").

In rejecting Plaintiffs' arguments under Section 1391(b)(3), Judge Moses identifies "multiple judicial districts in which venue for [P]laintiffs' claims could lie." (See R&R (Dkt. No. 91) at 46-47 (citations omitted))  For example, Plaintiffs allege that Transworld "'coordinates the [Defendant Law] Firms' activities' and 'manages the content' of the collection letters they send out" from its offices in the Northern and Southern Districts of Georgia.[16] (See id. (quoting Cmplt. (Dkt. No. 1) ¶ 181)  This allegation appears to show that "a substantial part of the events or omissions giving rise to [Plaintiffs'] claim[s]" took place in the Northern and Southern Districts of Georgia. See 28 U.S.C. § 1391(b)(2).  It also appears that venue would lie in Plaintiffs' home districts in Louisiana and South Dakota, given that certain Defendants allegedly directed collection letters to Plaintiffs in those districts. (See Cmplt. (Dkt. No. 1) ¶¶ 23-24); see Geffner v. Quanta Servs., Inc., 2018 WL 6807388, at *4 (S.D.N.Y. Dec. 27, 2018) ("The Second Circuit has upheld venue in districts in which plaintiffs receive correspondences giving rise to their claims, even when those correspondences were directed to them by Defendants from outside that district." (citing U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 153 (2d Cir. 2001); Bates v. C & S Adjusters, Inc., 980 F.2d 865, 868 (2d Cir. 1992)).

In sum, this Court agrees with Judge Moses that "Plaintiffs have failed to carry their burden" under Section 1391(b)(3). (See R&R (Dkt. No. 91) at 46-47)  While Plaintiffs argue that "there is no other district in which an action may be brought on [their] claims," they do not explain why venue would be improper in these other districts. (See Pltf. Obj. (Dkt. No.

---

[16] While the Complaint does not specify where in Georgia these offices are located, the R&R notes that "Transworld has offices in Atlanta (which is in the Northern District of Georgia) and Augusta (which is in the Southern District of Georgia)." (R&R (Dkt. No. 91) at 44 n.22 (citation omitted))

49

94) at 19-20)  Accordingly, Plaintiffs cannot rely on Section 1391(b)(3) to support venue in this District.

### 4.      Transfer

Where venue is improper, a district court must decide whether to dismiss a plaintiff's claims or to transfer the case to a district where venue is proper.  See Doe 1., 2023 WL 185496, at *3.  Here, Judge Moses recommends that Plaintiffs' claims be dismissed.  (R&R (Dkt. No. 91) at 48)  Because there is no objection to this recommendation, it will be reviewed solely for clear error.  See Burke., 661 F. Supp. 3d at 281-82.

"If venue is improper in the federal district court in which the action was filed, the decision whether to transfer or dismiss is evaluated under 28 U.S.C. § 1406(a) and 'lies within the sound discretion of the district court.'"  Pisani v. Diener, 2009 WL 749893, at *8 (quoting Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993)).  Section 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

"A 'compelling reason' for transfer is generally acknowledged when a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum."  Gonzalez v. Hasty, 651 F.3d 318, 324 (2d Cir. 2011) (alteration omitted) (quoting Moreno-Bravo v. Gonzales, 463 F.3d 253, 263 (2d Cir. 2006)).  Similarly, where a plaintiff "'request[s] that [an] action be transferred to another forum where [the] action otherwise could have been brought pursuant to 28 U.S.C. § 1406(a) instead of being dismissed' if the Court determines that venue is improper in this district," transfer would also be appropriate.  Micromem Techs., 2015 WL 8375190, at *7 & n.69 (citation omitted).  But where "no party has requested a transfer to another district," a court

50

may dismiss the action "without prejudice to its being filed in a district where venue is proper." TSIG Consulting v. ACP Consulting LLC, No. 14 Civ. 2032 (SHS), 2014 WL 1386639, at *4 (S.D.N.Y. Apr. 4, 2014).

Here, no party has requested a transfer, and Plaintiffs "expressly oppose any transfer." (R&R (Dkt. No. 91) at 48 (citing Pltf. Opp. (Dkt. No. 75) at 66))  Accordingly, Plaintiffs' claims will be dismissed for lack of venue under Rule 12(b)(3).

## IV.    **LEAVE TO AMEND**

Plaintiffs have requested leave to amend in the event this Court dismisses the Complaint (see Joint Stipulation and Proposed Order (Dkt. No. 96) at 2-4; Pltf. Obj. (Dkt. No. 94) at 20), and Defendants have not pointed to any compelling reason why leave to amend should be denied.  Moreover, it is not clear that any amendment would be futile.  Accordingly, leave to move to amend is granted.

### CONCLUSION

Judge Moses's R&R is adopted as set forth above, and Defendants' motions to dismiss are granted pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3).  Any motion for leave to move to amend will be filed by **April 13, 2026**.  The proposed Amended Complaint will be attached as an exhibit to any such motion.  Any opposition is due by **April 27, 2026**.

The Clerk of Court is directed to terminate the motions (Dkt. Nos. 61, 62, 64, 66, 69, 72).

Dated:  New York, New York
       March 30, 2026

SO ORDERED.

Paul G. Gardephe
United States District Judge

51